No. 2023-1880

# In the United States Court of Appeals for the Federal Circuit

**CODA DEVELOPMENT S.R.O., CODA INNOVATIONS S.R.O., FRANTISEK HRABAL,**

*Plaintiffs-Appellants,*

**v.**

**GOODYEAR TIRE & RUBBER COMPANY, ROBERT BENEDICT,**

*Defendants-Appellees.*

**On Appeal from the U.S. District Court for the Northern District of Ohio No. 5:15-cv-01572 | The Honorable Sara Lioi**

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS**

Boyd T. Cloern
Leah M. Quadrino
Scott M. Richey
Mark C. Savignac
Joseph F. Ecker
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 429-3000
bcloern@steptoe.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

ARGUMENT .....2

I. The district court erred in throwing out the jury's finding that five of Coda's trade secrets were valid and had been misappropriated. .....2

A. The "definiteness" of a trade secret is a fact question for the jury. .....2

B. The jury reasonably found that Goodyear misappropriated five Coda trade secrets. .....5

1. Trade Secret 24 .....7

2. Trade Secret 7 .....10

3. Trade Secret 11 .....11

4. Trade Secret 20 .....14

5. Trade Secret 23 .....15

II. The district court erred in rejecting "reasonable royalty" damages. .....17

A. This Court reviews the district court's Rule 50(a) ruling de novo. .....18

B. The jury should have been allowed to consider a reasonable royalty. .....19

III. The district court erred in rejecting Coda's equitable claims for injunctive relief and correction of inventorship. .....21

IV. This Court should reject the district court's indefensible statements about laches. .....24

V. If this Court remands to the district court, it should also order that the case be reassigned to another district judge. .....26

CONCLUSION .....29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Seating Co. v. USSC Group, Inc.*,
514 F.3d 1262 (Fed. Cir. 2008) ....................6

*AtriCure, Inc. v. Jian Meng*,
842 F. App'x 974 (6th Cir. 2021) ....................2, 3, 4

*Bianco v. Globus Medical, Inc.*,
30 F. Supp. 3d 565 (E.D. Tex. 2014) (Bryson, J., sitting by designation), *aff'd* 618 F. App'x 1032 (Fed. Cir. 2015)....................23

*Carney v. Adams*,
592 U.S. 53 (2020)....................25

*Caudill Seed & Warehouse Enterprise Co. v. Jarrow Formulas, Inc.*,
53 F.4th 368 (6th Cir. 2022) .................... 2-4, 8, 10, 14

*Groeneveld Transport Efficiency, Inc. v. Lubecore International, Inc.*,
730 F.3d 494 (6th Cir. 2013) ....................11

*IDX Systems Corp. v. Epic Systems Corp.*,
285 F.3d 581 (7th Cir. 2002) ....................4, 5

*In re Flint Water Cases*,
54 F.4th 176 (6th Cir. 2022) ....................18

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020) ....................3

*John B. v. Goetz*,
626 F.3d 356 (6th Cir. 2010) ....................26

*King v. Ford Motor Co.*,
209 F.3d 886 (6th Cir. 2000) ....................19

*Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc.*,
65 F.3d 498 (6th Cir. 1995) ....................18

*Lawyers Title Co. v. Kingdom Title Solutions, Inc.*,
592 F. App'x 345 (6th Cir. 2014) ........................................ 18

*Micro Chemical, Inc. v. Lextron, Inc.*,
318 F.3d 1119 (Fed. Cir. 2003) ........................................ 28

*Novus Group, LLC v. Prudential Financial, Inc.*,
74 F.4th 424 (6th Cir. 2023) ........................................ 4

*Olaplex, Inc. v. L'Oréal USA, Inc.*,
855 F. App'x 701 (Fed. Cir. 2021) ........................................ 3, 4

*SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*,
580 U.S. 328 (2017) ........................................ 25

*TLS Management & Marketing Services, LLC v. Rodriguez-Toledo*,
966 F.3d 46 (1st Cir. 2020) ........................................ 4, 5

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ........................................ 6

*United States v. Domenech*,
63 F.4th 1078 (6th Cir. 2023) ........................................ 26

**Other Authorities**

Fed. R. Evid. 702 ........................................ 11

Fed. R. Civ. P. 37 ........................................ 21

Fed. R. Civ. P. 52 ........................................ 25

Fed. R. Civ. P. 50 ........................................ 5-7, 16, 18, 20-21

Nine impartial jurors agreed that Goodyear maliciously misappropriated five Coda trade secrets, including Coda's crucial insight regarding the optimal location for the pump on a self-inflating tire (TS 24). Yet the district court threw that verdict out, insisting that the TS 24 pump location was indistinguishable from Coda's earlier "flap" location—even though, as the jury heard, *Goodyear itself recognized the distinction* and touted TS 24's innovation internally and to the U.S. Government.

The district court also refused to let the jury consider a reasonable royalty based on Goodyear's contemporaneous assessment of the pump location secret's value—even though, as the jury heard, *Goodyear itself valued its planned product based on the Coda innovation at **$411,464,000** in net asset value over five years*.

Goodyear's response is remarkably non-responsive. On liability, it offers a closing-argument-style narrative, cherry-picking evidence and arguments that the jury rejected, ignoring inconvenient facts, and drawing inferences in its own favor. It never acknowledges the deference courts give to the findings of the jury. And it is *utterly silent* on the key evidence showing that Goodyear itself viewed TS 24 as a significant innovation with tremendous value.

On damages, Goodyear seeks deference for the district court's insufficient-evidence ruling. But it does not dispute the legal framework, and it has no answer to Coda's point that Goodyear's own $411 million valuation is more than sufficient under the case law.

The jury's verdict should be reinstated, and the case should be remanded for a new trial on damages before a new district judge.

## ARGUMENT

### I. The district court erred in throwing out the jury's finding that five of Coda's trade secrets were valid and had been misappropriated.

#### A. The "definiteness" of a trade secret is a fact question for the jury.

Coda's opening brief (at 17-22) showed that whether the plaintiff has adequately defined his trade secret at trial is a fact question for the jury.

Goodyear makes little effort to defend the district court's ruling that the decision on definiteness is actually "for the [judge] to make" (Appx14). Its two pages of argument on the point are devoted mainly to arguing that trade secret law imposes a definiteness requirement both "pre-trial and at trial." Goodyear Br. 44-45. But that is not disputed. The only question here is: "When definiteness is an issue *at a jury trial*, is it a question for the judge or for the jury?"

As Coda showed, the Sixth Circuit has answered that question: "whether [the plaintiff] adequately specified what information related to its products are trade secrets" is a "fact question[]." *AtriCure, Inc. v. Jian Meng*, 842 F. App'x 974, 979 (6th Cir. 2021); *see also id.* ("Whether information constitutes a trade secret [under OUTSA] is a question of fact." (citation omitted)); *id.* (jury's finding that "the enumerated pieces of information were sufficiently specific trade secrets" was a "factual finding[]"); *Caudill Seed & Warehouse Enterprise Co. v. Jarrow Formulas,*

*Inc.*, 53 F.4th 368, 382 (6th Cir. 2022) (affirming "the jury's finding" that the plaintiff "sufficiently defined Trade Secret 1 at trial"). It is undisputed that the Sixth Circuit's view is controlling on this issue. *See* Opening Br. 15.[1]

This Court and the Ninth Circuit likewise treat the determination at trial of trade secret definiteness as a fact question for the jury. *See Olaplex, Inc. v. L'Oréal USA, Inc.*, 855 F. App'x 701, 703-06 (Fed. Cir. 2021) (Delaware UTSA) (applying the deferential "no reasonable jury" standard that governs judicial review of jury fact-finding to jury finding that plaintiff "possessed specific, identifiable Trade Secret(s)"); *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 660 (9th Cir. 2020) (California UTSA) ("the case must go to the jury" because "there is at least a genuine dispute as to whether [the plaintiff] was successful in identifying at least one trade secret with sufficient particularity").

Incredibly, Goodyear never grapples with these authorities, though Coda discussed them in depth. *Compare* Opening Br. 19-20 *with* Goodyear Br. 44-45. Goodyear does not address *AtriCure*, and it does not so much as mention *Caudill Seed* or *InteliClear*. It cites *Olaplex* for the (undisputed) proposition that definiteness matters during discovery as well as at trial, but offers no response to Coda's point that *Olaplex* treated the definiteness question at trial as a fact question,

[1] It is undisputed that the cases use various terms, like "definiteness," "reasonable particularity," "concreteness," and "specificity." *See* Opening Br. 18.

with judicial review limited to the "no reasonable jury" standard that applies to fact questions as opposed to de novo review for questions of law. *See* Opening Br. 20.

Goodyear's two other cases do not support it. *TLS Management & Marketing Services, LLC v. Rodriguez-Toledo*, 966 F.3d 46 (1st Cir. 2020) (Puerto Rico law), supports Coda. It treats definiteness as an aspect of "the existence of trade secrets," ruling for the defendant on definiteness grounds because there was "no evidence that could support a holding that [the plaintiff] established the existence of a trade secret." *Id.* at 49, 53. "Whether a trade secret exists is generally a question of fact," not of law. *Olaplex*, 855 F. App'x at 706; *see also Novus Group, LLC v. Prudential Financial, Inc.*, 74 F.4th 424, 427 (6th Cir. 2023); *AtriCure*, 842 F. App'x at 979 ("Whether information constitutes a trade secret is a question of fact." (citation omitted)); *Caudill Seed*, 53 F.4th at 381 (same). And *IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581 (7th Cir. 2002) (Wisconsin law), affirmed summary judgment on definiteness grounds with no discussion of whether trade secret definiteness is a question of fact or law. *Id.* at 583-84.

Both *TLS* and *IDX* say that "sufficient definiteness" is necessary "to permit a court to apply the criteria for protection … and to determine the fact of an appropriation." *TLS*, 966 F.3d at 53 (quoting Restatement (Third) of Unfair Competition § 39 comment d); *see also IDX*, 285 F.3d at 583 ("unless the plaintiff engages in a serious effort to pin down the secrets a court cannot do its job"). These

stray references to "a court" cannot be read to suggest that the definiteness question is for the judge rather than the jury *in the context of a jury trial* (and Goodyear does not argue that they should be read that way). *TLS* was an appeal from "a non-jury trial" (966 F.3d at 48) and *IDX* was a summary-judgment appeal (285 F.3d at 583). There was no jury in the picture.

Goodyear also says that the district court "enforced this [definiteness] requirement through a procedural order" during discovery. Goodyear Br. 45. But it does not explain how a discovery order could matter here. This is an appeal from a post-trial Rule 50(b) ruling rejecting the findings of the jury, which found the secrets sufficiently definite. There is no discovery order, or claim of a violation of a discovery order, before this Court.

Finally, Coda's opening brief (at 22) noted that Goodyear argued below that trade secret definiteness should be treated as a question of law by analogy to patent definiteness. Goodyear declines to pursue that faulty analogy here.

### B. The jury reasonably found that Goodyear misappropriated five Coda trade secrets.[2]

Nine impartial jurors sat through two weeks of trial and found that Goodyear maliciously misappropriated five Coda trade secrets. Appx17996-18002. But you

[2] Coda seeks reinstatement of the verdict based on the handful of trade secrets that the jury was allowed to consider. That hardly implies that "Coda accepts as correct" (Goodyear Br. 43) the rulings blocking the jury from considering other trade secrets.

would not know that from Goodyear's brief. Unsurprisingly, Goodyear completely disregards the legal standard that governs factual challenges to a jury verdict. Instead, it presents its jury case to this Court, cherry-picking bits of evidence and construing the facts in its favor while simply ignoring the contrary evidence that the jury actually found probative in rendering its verdict.

Perhaps most glaringly, Goodyear argues that TS 24 is indistinguishable from prior art—yet it offers *no response* to the proof that *Goodyear and Benedict themselves* viewed the TS 24 pump location as a crucial innovation over the prior-art location, and even presented it as such to the U.S. Government when applying for a patent and when seeking taxpayer money. *See* Opening Br. 28-30.

That is not how Rule 50(b) review of a jury verdict works. "A district judge cannot displace a jury's verdict merely because [she] disagrees with it," for "trial judges do not sit as thirteenth jurors, empowered to reject any verdict with which they disagree." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1310 (Fed. Cir. 2011) (citation omitted). And, by the same token, a litigant displeased with the jury's verdict cannot clear this high bar by cherry-picking from the trial record and briefing an appeal as if it were making its closing argument to the jury. *See also American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1266 (Fed. Cir. 2008) (Sixth Circuit standard).

Yet that is just what Goodyear attempts, including through an Introduction and "Counterstatement of the Case" that are far longer than its *entire Argument section* and recite its one-sided (and often wholly spurious) view of the case with no acknowledgement of the governing standard. *See* Goodyear Br. 1-39. Coda rebutted Goodyear's spurious facts at trial, but they are not the focus of this appeal—indeed, Goodyear does not even mention many of them in its Argument section.

Applying the Rule 50(b) standard, this Court should reinstate the jury verdict.

### 1. Trade Secret 24

As Coda showed in detail, TS 24 is Coda's insight that the optimal location for a self-inflating tire pump is in the tire sidewall close to and above the rim where the tire cyclically deforms, such that the pump is "pinched by … both sides of the tire" as it rolls. *See* Opening Br. 23-31 (citing Appx15493-15494, Appx15498). The TS 24 pump location was a major innovation over Coda's prior-art "flap solution," which placed the pump between the tire and rim, where the pump would be "crushed against the rim by the tire motion." *See id.* at 23-28 (quoting Appx15493). Goodyear and Benedict themselves understood all this, as they demonstrated both in internal documents and in an application seeking money from the U.S. Government. *See id.* at 28-30. A reasonable jury could surely understand the trade secret as the defendants themselves did. And the jury heard *hours* of testimony from Hrabal

explaining the TS 24 innovation and how it differed from his earlier flap solution. *See, e.g.,* Appx15949-15954, Appx15956-15959.

Goodyear does not really dispute this in its cursory argument (at 46-48). Rather, it limits its focus to "TS24 as written," by which it apparently means the description that Coda provided in a response to one of Goodyear's interrogatories during discovery. *Id.* at 47. But the interrogatory response is not "the" trade secret. Unlike a patent, a trade secret has no authoritative textual embodiment. To the extent that the district court admitted testimony and documents (including Goodyear's own documents, *see* Opening Br. 28-30), the jury was permitted to understand TS 24 in light of that evidence and reject Goodyear's attempts to manufacture latent ambiguities in the interrogatory response.

In short, under Sixth Circuit law, "[t]he jury could credit this and similar testimony to understand [the trade secret], regardless of [the defendant's] contentions that [the plaintiff] concealed [the secret's] true definition." *Caudill Seed*, 53 F.4th at 382.

The jury heard only the evidence that the district court allowed it to hear, and it was entitled to consider that evidence in rendering its verdict. That is the point of a trial. While there were disputes at trial over what evidence should be admitted, Goodyear has not appealed or otherwise challenged in this Court any of the district court's rulings admitting evidence. Nor has it brought before this Court any request

for a Rule 37 discovery sanction based on any supposed deficiency in Coda's discovery responses. (For one thing, Goodyear could not possibly show prejudice when it knew precisely what innovation TS 24 represented.) Goodyear's sole challenge is to the sufficiency of the evidence to support the jury's verdict. Goodyear must accept the trial record as it stands.

Remarkably, Goodyear never disputes that *Goodyear and Benedict themselves* understood perfectly well the distinction between the prior-art flap solution and the innovation that TS 24 represented over that prior art. Goodyear just ignores that damning evidence. As it did, unsuccessfully, with the jury, Goodyear plays word games in a bid to blind this Court to the crucial distinction that Goodyear itself admittedly understood and even touted to the Department of Energy. The Court should not be deceived.[3]

Goodyear complains that Coda's TS 24 interrogatory response was phrased in terms of "Coda's knowledge regarding …." Goodyear Br. 46. The district court did not rely on this, and Goodyear does not explain why it finds the inclusion of that language objectionable under Ohio law.

---

[3] Unsurprisingly, Goodyear does not assert that it was actually confused about what Coda was claiming or that it was surprised at trial. As its own documents prove, Goodyear understood perfectly well. Anyway, Coda provided substantial additional detail, such as in its Amended Complaint. Appx2070-2077; Appx2082-2084; Appx2110; Appx2131.

Finally, Goodyear argues "alternatively" that TS 24 was not actually secret because it was the same pump location that Coda had disclosed in earlier public documents. *See* Goodyear Br. 48. This is the same as Goodyear's definiteness argument. It relies on conflating the secret TS 24 pump location with the publicly disclosed prior-art flap solution, despite the uncontroverted evidence that Goodyear itself understood the crucial distinction and even touted it to the U.S. Government. *See* Opening Br. 28-30. Again, the jury was entitled to understand the evidence and reject Goodyear's attempts at deception.

**2. Trade Secret 7**

As with TS 24, Goodyear purports to limit TS 7 to the language of a Coda interrogatory response. *See* Goodyear Br. 49. It contends that the jury should not have considered "Hrabal's testimony" about his innovation because the interrogatory response did not somehow include all of that trial testimony. *Id.* Under Sixth Circuit law, however, the jury was entitled to consider the evidence to understand the trade secret. *See Caudill Seed*, 53 F.4th at 382. And Goodyear does not even argue that TS 7 was indefinite when one considers all the trial evidence. *See also* Opening Br. 31; Appx15559-15561, Appx15591.

Goodyear next says that Coda's expert testimony was too "vague." *See* Goodyear Br. 50-51. But the expert testified that "Goodyear patented a configuration that is essentially a concept of [TS 7's] concept"—a "perfect knock-

off of that technology." Appx16248-16250. The expert was entitled to "testify in the form of an opinion" (Fed. R. Evid. 702), Goodyear was entitled to present its own expert and to cross-examine Coda's, and the jury was entitled to consider the trial record and credit Coda's expert's opinion. The argumentative characterization of the expert testimony as "vague" is not a basis to reject the jury verdict. (Goodyear's cited Sixth Circuit case dealt with testimony from a *fact witness*. *See Groeneveld Transport Efficiency, Inc. v. Lubecore International, Inc.*, 730 F.3d 494, 507 (6th Cir. 2013).)

Goodyear's other argument under the heading of "use" appears to go instead to definiteness, which has already been addressed here. *See* Goodyear Br. 50-51.

Finally, Goodyear asserts that the district court "held that Coda failed to establish the secrecy of TS7." Goodyear Br. 51 (citing Appx23). But there was no such holding. *See* Appx19-21 (discussing TS 7). The page that Goodyear cites is from the district court's discussion of *TS 11*, which mentions TS 7 in passing to acknowledge that Coda *did* provide evidence of its secrecy. *See* Appx23.

**3. Trade Secret 11**

TS 11 covers considerations for designing the groove of a tube-in-groove-type self-inflating tire. Appx17879-17880. As Coda showed, the trial record supports the jury's findings that TS 11 is sufficiently definite, that Goodyear used and

disclosed substantial aspects of TS 11, that Hrabal disclosed TS 11 to Goodyear, and that Coda kept TS 11 secret. *See* Opening Br. 32-35.

In its response on definiteness, Goodyear simply quotes snippets of the district court's erroneous ruling, which Coda refuted in its opening brief, and argues that "Coda forfeited its appellate challenge" on definiteness by not raising it in its opening brief. *See* Goodyear Br. 52-53. But Coda expressly argued that "TS 11 is definite," and it plainly is. *See* Opening Br. 33. Even Goodyear itself elsewhere admits that Coda challenges the "ruling that TS7, 11, 20, and 24 were indefinite." Goodyear Br. 43. There was no forfeiture.[4]

On secrecy, Coda showed that Hrabal testified extensively regarding the secrecy of his trade secrets. *See* Opening Br. 34-35 (citing testimony). Goodyear apparently disagrees with Coda's observation that "there is no requirement that secrecy be proved through separate testimony for each secret rather than general testimony by the inventor that he keeps his secrets confidential." Goodyear Br. 54 (quoting Opening Br. 34-35). But Goodyear fails to point to any such imagined

[4] Goodyear says that Hrabal's extensive testimony about how he overcame the problem of the pump tube walking away is irrelevant to TS 11 because "the so-called 'walking-away' problem was not even mentioned in TS11; it was mentioned in Coda's TS12, which Coda abandoned before trial." Goodyear Br. 53. This is sophistry. TS 11 covers Hrabal's *solutions* to the walking-away problem. *See* Opening Br. 33-34; Appx15565-15567, Appx15590-15591, Appx15595, Appx15767. And the fact that another trade secret that was never tried mentions walking away says nothing about that concept's relationship to TS 11.

requirement. It cites only OUTSA's requirement that a trade secret be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* (quoting Ohio Rev. Code § 1333.61(D)(2)). But that is the substantive requirement that trade secrets be secret; it is not an evidentiary requirement that the secrecy of each secret in a multi-secret case be proved through separate testimony about each secret. In fact, the evidence of secrecy in a trade secret case usually is broadly applicable rather than secret-specific (e.g., evidence about NDAs and cybersecurity). Nor would an Ohio evidentiary rule, if it even existed, apply to a trial in federal court in any event. And this Court can disregard out of hand Goodyear's attorney argument, unburdened by citation to the record, that "Hrabal was profligate in spreading information about his self-inflating-tire technology." *Id.*

As for Coda's disclosure of TS 11 to Goodyear, Goodyear offers a bizarre argument that Coda's statement that the district court "distort[ed]" the referenced testimony is somehow different from a hypothesized statement that the court "incorrectly characterized" the testimony. Goodyear Br. 54-55. Distorting testimony entails mischaracterizing it. And Goodyear does not even dispute that the district court's ruling rested on a distortion of Hrabal's testimony. It merely offers an unexplained assertion that the many passages of testimony that Coda cited actually do not support its position. Such a bald assertion cannot overcome the verdict of the impartial jurors who heard the referenced testimony.

Finally, Goodyear attempts to dismiss Coda's evidence that Goodyear used substantial components of TS 11 by insisting that "Coda only discusses two of the eight components of TS11" that Goodyear believes had been "publicly disclosed by Coda." Goodyear Br. 55. But the substantial evidence of use by Goodyear was more than sufficient to support the jury's verdict. *See* Opening Br. 33-34 (citing record evidence). Again, Goodyear cannot overcome the trial record and the jury verdict through unadorned attorney argument or by asking this Court to view the evidence in the light most favorable to Goodyear.

**4. Trade Secret 20**

TS 20 concerns the design considerations for constructing the overall assembly for a self-inflating tire. *See* Opening Br. 35-37; Appx17880-17881; Appx24 (quoting Appx6470). Goodyear does not attempt to defend the district court's ruling on definiteness. It merely quotes that ruling, claims that it was correct, and bizarrely asserts that Coda did not address definiteness in its opening brief. *See* Goodyear Br. 55-56. In fact, Coda showed in detail how Hrabal's testimony addressed TS 20. *See* Opening Br. 35; *Caudill Seed*, 53 F.4th at 382.

As for secrecy, Goodyear does not dispute (and actually appears to agree with) Coda's point that "trade secret protection applies to a unique *combination* even if *none* of the elements is itself secret," meaning that the district court was necessarily wrong to demand proof that Coda kept *all* of the elements secret. Goodyear Br. 57

(quoting Opening Br. 36). Goodyear instead says only that Coda did not show either that it disclosed "the entire combination" to Goodyear or that Goodyear used the entire combination. *Id.* But Hrabal explained and demonstrated TS 20 to Goodyear during their visual inspection of Coda's prototype pressure regulating valves, Goodyear inspected and disassembled these valves at the June 2009 meeting, and the jury had access to the valves themselves. *See* Opening Br. 36. Goodyear does not explain what aspect of TS 20 it believes the jury had insufficient evidence of.

**5. Trade Secret 23**

TS 23 concerns Coda's testing of its self-inflating tire innovations and the results of those tests. *See* Opening Br. 37-40.

Coda showed that TS 23 was secret and drew commercial value from that secrecy. *See id.* at 37-39. In response, Goodyear argues that Coda said the same thing in earlier public disclosures. *See* Goodyear Br. 59. But Goodyear does not suggest that the particular figures claimed to be trade secrets were public.

Goodyear also says that there is no evidence that Coda disclosed the secret testing results to Goodyear. *See* Goodyear Br. 58-59. Coda explained in its opening brief that this is wrong: "Hrabal testified that he disclosed TS 23 to Goodyear." Opening Br. 39-40 (citing Appx15546-15547, Appx15584). Goodyear says that the cited testimony does not support this statement. But it does:

> Q. Mr. Hrabal, did you have a goal for the first meeting with Goodyear?

A. Our meeting – our goal was to convince them, you know, to speak with us more and to progress the cooperation.

Q. Now, Mr. Hrabal, did you discuss your testing results?

A. Yes. We discussed the testing results both public and confidential testing results.

Appx15546. This testimony concerns the discussion at the in-person meeting and is clearly distinct from the testimony about the email that Goodyear focuses on. *See* Goodyear Br. 58. And the other cited testimony says:

Q. … And you assert a testing trade secret. Is that trade secret 23?

A. Yes.

Q. And that's related to your testing results communicated to Goodyear; is that right?

A. Yes.

Appx15584. Hrabal's testimony that TS 23 covers his "testing results communicated to Goodyear" is more than sufficient for a reasonable jury to find that Hrabal communicated the TS 23 testing results to Goodyear.

Finally, Goodyear asserts, in connection with Hrabal's failure to mark an email with another test result "confidential," that "no reasonable jury could conclude that Goodyear understood this email to contain confidential information, when Coda failed to follow the NDA's mechanism for indicating a document's confidentiality." Goodyear Br. 59. It is not clear what legal significance Goodyear attributes to this bare assertion. In any event, Goodyear did not argue in its Rule 50 motion (and the

district court did not suggest in its Rule 50 ruling) that no reasonable juror could find that Goodyear knew or had reason to know that the emailed test result was secret (and a jury plainly could find that). *See* Appx18066-18067. Rather, Goodyear urged that the omission of a "Confidential" marking "shreds two essential elements of Coda's misappropriation claim—that the information was 'secret,' and that Coda took reasonable measures to protect it." *Id.* Goodyear thus forfeited any argument that it did not know that the result was secret. And, as Coda explained, a single inadvertent failure to apply a "Confidential" designation under an NDA cannot establish as a matter of Ohio law that the information was not secret and the subject of reasonable efforts to maintain its secrecy. The jury heard and weighed *all* the evidence, and it found for Coda. *See* Opening Br. 37-38.[5]

## II. The district court erred in rejecting "reasonable royalty" damages.

Coda showed that the district court erred in granting Goodyear's Rule 50(a) motion and refusing to allow the jury to award "reasonable royalty" damages. *See* Opening Br. 40-50. Goodyear's 2.5-page response falls flat.

---

[5] Separately, Goodyear insinuates that Coda had no trade secrets because it did not write to Goodyear after the meetings to put the orally disclosed secrets in writing, as the NDA permitted. Goodyear Br. 1, 19. But the NDA did not require Coda to do so; it just said that Coda could (*id.* at 19). That Coda did not invoke that permissive provision has no significance under the NDA, and certainly none under OUTSA.

**A. This Court reviews the district court's Rule 50(a) ruling de novo.**

Goodyear sought Rule 50(a) judgment as a matter of law on "reasonable royalty" damages, and the district court granted that ruling from the bench. *See* Opening Br. 40 (citing Appx16802, Appx17854-17855). Judgment as a matter of law is proper only if no reasonable jury could find for the nonmovant. *Id.* And this Court reviews judgment as a matter of law de novo. *Id.*

Goodyear makes no effort to defend the district court's ruling under the applicable standard. Nor does it argue that Rule 50(a) is inapplicable. It simply ignores Rule 50(a) and treats the ruling as a typical ruling on jury instructions that should be reviewed only for abuse of discretion. *See* Goodyear Br. 61.

But this quibbling is of no moment. "[A]n error of law necessarily constitutes an abuse of discretion." *In re Flint Water Cases*, 54 F.4th 176, 192 (6th Cir. 2022). And the question whether the trial evidence was sufficient for a reasonable jury to find for the nonmovant is a quintessential question of law. *See, e.g.*, *Lawyers Title Co. v. Kingdom Title Solutions, Inc.*, 592 F. App'x 345, 349 (6th Cir. 2014) ("Because a directed verdict tests only the sufficiency of the evidence, it presents a question of law that appellate courts review de novo." (quoting *Reeves v. Healy*, 950 N.E.2d 605, 615 (Ohio App. 2011))); *Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 503 (6th Cir. 1995). That is why Rule 50 is titled

"Judgment *as a Matter of Law*" and asks whether the jury has "a *legally* sufficient evidentiary basis to find for" the nonmovant.

Goodyear's argument that Coda "is not entitled to an instruction on a theory not supported by the evidence" (Goodyear Br. 61) and the district court's refusal to allow the jury to award a reasonable royalty "given the lack of evidence relative to some of that portion of that damage calculation in the court's estimation" (Appx17854-17855) are thus reviewed de novo.[6]

Regardless, the district court's ruling was reversible error under any standard.

**B. The jury should have been allowed to consider a reasonable royalty.**

Goodyear does not dispute any aspect of Coda's discussion of the law governing reasonable royalty awards in trade secret cases. *See* Opening Br. 41-45. Nor does it seriously dispute that the trial record contained sufficient evidence for the jury to award a reasonable royalty under the governing case law. *See id.* at 46-50. Its vague and scattershot arguments all fail.

*First*, if Goodyear means to argue that the district court did not decide based on the perceived insufficiency of the evidence but rather made a "factual" finding

[6] *King v. Ford Motor Co.*, 209 F.3d 886 (6th Cir. 2000), is not to the contrary. It affirmed the refusal to give a jury instruction because it agreed that "Ford failed to present sufficient evidence warranting such an instruction." *Id.* at 898-99. The Sixth Circuit did not suggest that it was deferring to the trial court on the sufficiency of the evidence rather than reviewing de novo.

that "Coda hadn't presented a reasonable-royalty case" (Goodyear Br. 61), it is mistaken. The evidence that Coda would ask the jury to consider in awarding a reasonable royalty—including *Goodyear's own contemporaneous valuation* of Coda's pump-location trade secret—is undisputedly in the trial record. *See* Opening Br. 46-50. Goodyear emphasizes (at 60-62) that Coda's expert addressed an "actual damages" measure rather than a reasonable royalty, but that is immaterial given that an expert opinion undisputedly is not required for a reasonable royalty award. And, if not for the district court's misguided ruling, Coda would have argued for a reasonable royalty in its closing and the court would have instructed the jury on that measure of damages (*see* Opening Br. 45 (Ohio model jury instruction)). Presenting evidence sufficient to support a reasonable royalty award, asking for a reasonable royalty at closing, and giving an instruction on reasonable royalty would plainly amount to "presenting a reasonable-royalty case." *See id.* 46-47.[7]

*Second*, Goodyear asserts that OUTSA "allows a claimant to seek a reasonable royalty only '[i]n lieu of damages measured by any other methods.'" Goodyear Br. 62 (quoting OUTSA). But OUTSA does not limit the plaintiff to "seek[ing]" just one type of damages. Ohio's model jury instruction expressly

[7] Incredibly, Goodyear took the opposite "factual" position below, arguing in its Rule 50(a) motion that "Coda has not put on any case of 'actual loss' under the statute—instead, it has presented a royalty theory." Appx16802.

contemplates that the jury may consider multiple measures (though it can only *award* one). *See* Opening Br. 45.

*Third*, Goodyear insinuates that Coda failed to make adequate discovery disclosures. *See* Goodyear Br. 62. But no claim of a discovery violation is before this Court: An alleged failure to disclose would be addressed under Federal Rule of Civil Procedure 37(c), but Goodyear did not seek Rule 37(c), and the district court did not rely on any supposed disclosure violation in granting Goodyear's Rule 50(a) motion. It is far too late now for Goodyear to dredge up discovery disputes.

*Finally*, Goodyear says that Coda's primary evidence for a reasonable royalty is "a single piece of Goodyear valuation evidence." Goodyear Br. 62. But Goodyear does not even address Coda's detailed showing that this exemplary evidence is more than sufficient under the leading cases. *See* Opening Br. 47-50.

## III. The district court erred in rejecting Coda's equitable claims for injunctive relief and correction of inventorship.

The district court's decision on the equitable issues was fatally infected by its erroneous rejection of the jury verdict, requiring remand. *See* Opening Br. 50-52. With respect to injunctive relief, Goodyear does not dispute that a remand is necessary if this Court reverses any aspect of the district court's Rule 50(b) ruling. *See* Goodyear Br. 67.

As for correction of inventorship, Goodyear argues that the jury's findings would not have constrained the district court because the jury made its findings under

a preponderance standard whereas inventorship is assessed under a clear-and-convincing-evidence standard. *See id.* at 63. This is nonsense.

*First*, the jury *did* apply a clear-and-convincing-evidence standard when it found that Goodyear and Benedict stole Coda's trade secrets with *actual malice*. Appx18000-18001. Yet the district court viewed Benedict, the principal miscreant, as practically saintly, lauding his "credible and convincing testimony." Appx39. Even under the clear-and-convincing standard, the jury and judge seem to have been watching different trials.

*Second*, even if a finding under the preponderance standard does not necessarily *mandate* the same finding under the clear-and-convincing standard, it does not follow that a court applying the latter standard can utterly disregard jury findings made under the former. The court must take the jury's findings as given under the preponderance standard even if it ultimately decides that the evidence falls short of clear and convincing. Here, the district court acknowledged that it was *not* doing that. Appx40. It "summarily rejected" Coda's arguments based on the jury findings, and it based it's ruling on a view of the key witnesses and testimony that clearly conflicted with the jury's view. *See* Opening Br. 51, 59-60. There is no credible argument that the court's rulings turned on the difference in the burden of proof rather than on the court's decision to ignore the jury's findings entirely.

Goodyear cites only *Bianco v. Globus Medical, Inc.*, 30 F. Supp. 3d 565 (E.D. Tex. 2014) (Bryson, J., sitting by designation), *aff'd* 618 F. App'x 1032 (Fed. Cir. 2015). But *Bianco* supports Coda. Judge Bryson acknowledged that "[t]he findings of the jury, as expressed in its verdict, are to be given binding effect to the extent that they apply to the equitable issues subsequently decided by the Court," despite the differing standards of proof *Id.* at 573 (citing cases). He then included the jury's findings in his own findings of fact to the extent that the issues overlapped. *See id.* at 573-74. He ultimately held that "notwithstanding the jury's verdict on the trade secret misappropriation issue, the Court concludes that Dr. Bianco has not met his burden of showing, by clear and convincing evidence, that he is entitled to be named a co-inventor." *Id.* at 579-80. But he reached that holding after giving due weight to the jury's findings, explaining the discrepancy in terms of the differing legal and evidentiary standards. He did not remotely suggest, as Goodyear now maintains (at 63), that a jury's preponderance findings in a trade secret case impose no constraint on the judge's subsequent findings on inventorship. Under the Seventh Amendment, Coda is entitled to an inventorship ruling consistent with the jury's findings. *See, e.g.*, *Bianco*, 30 F. Supp. 3d at 573.[8]

---

[8] Goodyear asserts that "Coda's case … is off-point." Goodyear Br. 65. Actually, as Coda made clear (at 51), it was the district court that cited the case in question.

Goodyear also spends several pages attempting to relitigate inventorship, based on the entirety of the two-week trial record, on a blank slate. *See* Goodyear Br. 63-67. This is ink spilled in vain. The district court based its conclusions on factual findings that must be vacated. This Court cannot make factual findings in the first instance based on a few pages of attorney argument. Until the district court makes findings based on the correct standard, with due deference to the jury's findings, there is no ruling for this Court to review on the ultimate issue. As Goodyear notes, "'[t]his Court declines to address issues not decided by the district court.' … [T]here would be no basis for this Court to make an advisory determination on this equitable issue in the first instance." Goodyear Br. 67-68 (quoting *Waymark Corp. v. Porta Systems Corp.*, 245 F.3d 1364, 1368 (Fed. Cir. 2001)).

## IV. This Court should reject the district court's indefensible statements about laches.

Goodyear insists that the district court did not issue an actual ruling on laches and that this Court should say nothing about the district court's (erroneous) statements regarding its apparent inclination to throw the case out on laches grounds. *See* Goodyear Br. 67-68. Presumably Goodyear anticipates that the district judge, if reversed now, will throw the case out on laches grounds consistent with her footnoted suggestion, necessitating a third appeal to correct that error.

Coda agrees with Goodyear's point that this Court should not make findings of fact on equitable issues in the first instance—on this issue or on the equitable issues of inventorship and injunctive relief. *See id.* Since the district court did not make the formal findings required by Federal Rule of Civil Procedure 52(a)(1), there are no findings of fact for this Court to review at this stage.

That said, the Court should make clear, for the sake of judicial efficiency, that laches has no application to the jury's damages award, because "laches may not be invoked to bar damages relief if the action was brought within the limitations period." Opening Br. 53 (quoting *Operating Engineers Local 324 Health Care Plan v. G&W Construction Co.*, 783 F.3d 1045, 1054 (6th Cir. 2015)); *see id.* at 53-54; *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 580 U.S. 328, 331-46 (2017). This is a question of law that this Court can answer without waiting for the district court to double down on its erroneous suggestion. Notably, Goodyear does not dispute Coda's points on this issue or contend that laches could bar damages in this case. And a statement on this point would hardly be an "advisory determination" (Goodyear Br. 67): Unless Goodyear is willing to foreswear re-asserting its laches defense on remand, a ruling would establish the rights of the parties to this litigation on a disputed question of law. That is the opposite of an advisory opinion. *See, e.g.*, *Carney v. Adams*, 592 U.S. 53, 58 (2020).

## V. If this Court remands to the district court, it should also order that the case be reassigned to another district judge.

To avoid further waste in this nine-year-old litigation and to preserve the appearance of justice, this Court should order that this case be reassigned on remand. *See* Opening Br. 56-61.

Goodyear's response is simply non-responsive. *See* Goodyear Br. 68-70. It repeatedly quotes the abstract legal standard, apparently hoping to persuade this Court that the Sixth Circuit's standard forbids reassignment in all cases. *See id.* at 68-69. As Coda showed, though, the Sixth Circuit does reassign cases in appropriate circumstances. *See, e.g.*, Opening Br. 57; *United States v. Domenech*, 63 F.4th 1078, 1084-85 (6th Cir. 2023); *John B. v. Goetz*, 626 F.3d 356, 363-65 (6th Cir. 2010).

It was therefore incumbent on Goodyear to explain why, in its view, the reassignment standard is not met here. After all, Coda gave a detailed account of why it *is* met. *See* Opening Br. 57-61. *First*, the district court made a number of serious errors at the pleading stage, throwing the case out, refusing to let Coda replead, and necessitating an appeal to this Court, which reversed the court's "troubling" ruling. *See id.* at 57-58. *Second*, the district court repeatedly and erroneously accused Coda and its counsel of "gamesmanship" and even went so far as to accuse Coda's counsel of *unethical behavior* based on a privilege determination that an impartial magistrate judge ruled was *correct*. *See id.* at 58-59. *Third*, continuing to hold onto its longstanding dim view of Coda and its counsel, the

district court branded Hrabal's testimony "unconvincing[]" and "evasive" while praising Benedict—even though the nine impartial jurors who watched the same trial took the opposite view. *See id.* at 59-60. *Fourth*, the court opined, with almost no supporting analysis, that it "f[ound] merit in Goodyear's assertion" of the affirmative equitable defense of laches, even though Goodyear itself saw its timeliness evidence as so weak that it did not even try to present a statute-of-limitations defense. *See id.* at 60. *Fifth*, the district court has made numerous clear errors of law, both at trial and in the earlier pleading-stage ruling that this Court was compelled to reverse—and the promise of more such errors (including on laches) if the case is not reassigned does not promote the appearance of justice. *See id.* at 60-61.

Goodyear barely even tries to refute these points. It quotes boilerplate about the permissible grounds for reassignment and baldly asserts that "[t]here is no indication" that any is present here. Goodyear Br. 69. But it does not respond to Coda's concrete explanation of why the facts here do satisfy the standard. The only concrete fact that it addresses at all is this Court's pleading-stage reversal of the district court, which Goodyear purports to brush aside as a mere "procedural reversal." *Id.* A Rule 12(b)(6) dismissal is no mere procedural ruling, and several of the district court's many errors at that stage are directly contrary to the appearance (and perhaps the reality) of justice and impartiality. *See* Opening Br. 57-58. These included considering non-record evidence without giving Coda any opportunity to

respond, dismissing Coda's claims based on a legal theory of the court's own devising without giving Coda a chance to respond, drawing inferences against Coda when reasonable inferences could be drawn in its favor, and rejecting Coda's *first* amended complaint on the basis of its "amazing clarity." This Court rightly found the pile-up of errors "troubling." *Id.* at 58.

Goodyear makes no effort at all to defend the district court's baseless attack on Coda's counsel's "honesty, integrity, [and] professionalism"; the astounding discrepancies between her stated view of the trial and that of the impartial jury; or her legally baseless invocation of the laches defense. It rests instead on a self-serving, unexplained, and over-the-top insistence that "Now-Chief Judge Lioi—both in the initial proceedings [already rejected by this Court as 'troubling'] and in the conduct of this trial—was the model of a careful, considerate judge." Goodyear Br. 70. As Coda has shown, though, and as this Court's prior opinion recognized with respect to the "initial proceedings," that is simply not true. The case should be reassigned.[9]

[9] *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119 (Fed. Cir. 2003), is inapposite. There, the "*only* ground for reassignment [wa]s that this [C]ourt ha[d] twice reversed portions of the district court's holdings." *Id.* at 1126 (emphasis added). Here, the district court's many errors are a small part of the case for reassignment.

## CONCLUSION

This Court should reverse the decision below and remand for a new damages trial. On remand, the case should be reassigned to a new district judge.

Respectfully submitted,

/s/ *Boyd T. Cloern*

Boyd T. Cloern
Leah M. Quadrino
Scott M. Richey
Mark C. Savignac
Joseph F. Ecker
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036,
(202) 429-3000
bcloern@steptoe.com
lquadrino@steptoe.com
srichey@steptoe.com
msavignac@steptoe.com
jecker@steptoe.com

April 9, 2024

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with Circuit Rule 32(b)(1) because it contains 6,866 words.

2. This brief complies with Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in 14-point proportionally-spaced Times New Roman font.

/s/ *Boyd T. Cloern*
Boyd T. Cloern

April 9, 2024

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 9th day of April, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which thereby served a copy upon all counsel of record.

/s/ *Boyd T. Cloern*
Boyd T. Cloern

April 9, 2024

*Counsel for Plaintiffs-Appellants*