# United States Court of Appeals for the Federal Circuit

---

**CODA DEVELOPMENT S.R.O., CODA INNOVATIONS S.R.O., FRANTISEK HRABAL,**
*Plaintiffs-Appellants*

**v.**

**GOODYEAR TIRE & RUBBER COMPANY, ROBERT BENEDICT,**
*Defendants-Appellees*

---

2023-1880

---

Appeal from the United States District Court for the Northern District of Ohio in No. 5:15-cv-01572-SL, Judge Sara Lioi.

---

Decided: December 8, 2025

---

BOYD CLOERN, Steptoe LLP, Washington, DC, argued for plaintiffs-appellants. Also represented by JOSEPH F. ECKER, LEAH MARGARET QUADRINO, SCOTT RICHEY, CHRISTOPHER ALAN SUAREZ.

GREGORY A. CASTANIAS, Jones Day, Washington, DC, argued for defendants-appellees. Also represented by TRACY A. STITT; JOHN CHARLES EVANS, CALVIN GRIFFITH,

THOMAS KOGLMAN, DAVID MICHAEL MAIORANA, Cleveland, OH.

---

Before LOURIE, DYK, and CUNNINGHAM, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge*.

Coda Development s.r.o., Coda Innovations s.r.o., and Frantisek Hrabal (collectively, "Coda") appeal a decision of the United States District Court for the Northern District of Ohio holding that Goodyear Tire & Rubber Company and Robert Benedict (collectively, "Goodyear") were entitled to judgment as a matter of law of no trade secret misappropriation and denying correction of inventorship of Goodyear's U.S. Patent No. 8,042,586 (the "'586 patent"). *See Coda Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, 667 F. Supp. 3d 590, 611 (N.D. Ohio 2023) ("*JMOL Decision*"); *Coda Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, 667 F. Supp. 3d 567, 589 (N.D. Ohio 2023) ("*Bench Decision*"). For the reasons below, we affirm.

## I. BACKGROUND

Coda sued Goodyear in the United States District Court for the Northern District of Ohio, raising, among other things, claims for trade secret misappropriation under Ohio state law and correction of inventorship of the '586 patent.[1] *JMOL Decision* at 593; J.A. 158–96. Both the asserted trade secrets and the '586 patent relate to self-

---

[1] This appeal marks the second time that this case is before this court. Previously, we vacated the district court's dismissal and remanded the case to the district court to allow Coda to amend its complaint. *CODA Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1362 (Fed. Cir. 2019). The amended complaint similarly raised trade secret and correction of inventorship claims. *See JMOL Decision* at 594 & n.3; J.A. 1120; J.A. 1943–2131.

inflating tire ("SIT") technology. *See, e.g.*, *JMOL Decision* at 595–97; '586 patent col. 1 ll. 5–7; *id.* at col. 10 ll. 29–54.

The district court held a jury trial on Coda's trade secret claims in September 2022. *JMOL Decision* at 598. The jury found that Goodyear had misappropriated five of Coda's alleged trade secrets and awarded Coda $2.8 million in compensatory damages and $61.2 million in punitive damages. *Id.* at 598–99; J.A. 17997–8001. These five alleged trade secrets, the only ones at issue on appeal, were defined by Coda as described below:

> TS 7: Coda's design and development of a multi-purpose interface for transporting air in a self-inflating tire that can connect to the air source, connect to the tire interior, connect to the peristaltic pump, serve as an end to the peristaltic pump, connect to the regulator, carry the regulator, go around or through the bead, go around or through the tire layers, click to the bead and hold the filter;
>
> TS 11: Coda's knowledge of how to design and develop self-inflating tire pump and groove solutions, consisting of round pump tubing in an outward-facing groove with straight, angled interior geometry; pump tubing with geometry that interlocks with its seat; pump tubing with elliptical interior cross-section; variant pump tube, groove and chamber dimensions, size and materials; pump tube and groove design to minimize internal friction; a "tubeless" pump solution (i.e., a pump that may compose an integral part of tire); cross-section designs that minimize stress on compression in order to improve durability; and tubing with reinforced wall;
>
> TS 20: Coda's knowledge of how to design and develop self-inflating tire systems with circulating and non-circulating pump variations, comprised of the disclosure of technical information through observations and descriptions of the three-way valve

regulator, and explanations of the function and airpaths for the states of recirculation and inflation; closure elements related to recirculation systems and a pressurized air reservoir that would permit the storage of air within the system without the need to engage the pump tube with each tire revolution; recirculation at different pressures, such as ambient pressure; recirculation through various paths, such as through the tire, the atmosphere and the pump tube; the safety benefit of recirculating around the pump tube isolated from the tire cavity; a check valve on intake (between the pump tube and the atmosphere) to only permit air in when pressure in the pump tube falls below atmospheric pressure; and a check valve on output (between the pump tube and tire interior) to only allow air into the tire when pressure in the pump tube exceeds the tire pressure;

TS 23: Coda's development of a functional self-inflating tire as demonstrated by the test results confirming that the tire pump can generate pressure higher than the pressure in the tire cavity, through the test results showing that the pump placed on the tread could generate 6.5 absolute atmospheres of pressure (5.5 relative atmospheres); the test results showing that the tube-in-groove pump of the prototype could generate 3.3 absolute atmospheres of pressure; and test results that demonstrated that the Flap Tubes could generate 1 relative atmosphere of pressure;

TS 24: Coda's knowledge regarding the optimal location for placement of a pump in a tire for tire manufacturers, namely, in the sidewall close to, and above, the rim where the tire cyclically deforms in response to deformation.

*JMOL Decision* at 596–98, 611 (cleaned up); Appellants' Br. 16–40.

Following trial, the district court granted Goodyear's motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), concluding that (1) TS 7, TS 11, TS 20, and TS 24 are not sufficiently definite; (2) TS 11, TS 20, TS 23, and TS 24 are not "secret;" (3) TS 7, TS 11, TS 20, and TS 23 had never been used or disclosed by Goodyear; and (4) TS 11 and TS 20 were never conveyed by Coda to Goodyear. *JMOL Decision* at 602–11. After considering the parties' briefs in lieu of a bench trial, *see Bench Decision* at 572–73; *see also id.* at 571 (citing Fed. R. Civ. P. 52(a)(1)), the trial court denied Coda's correction of inventorship claim and denied its other pertinent requests for relief. *Id.* at 589.

Coda timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. Standard of Review

"In reviewing district court judgments, we apply the law of the circuit in which the district court sits with respect to nonpatent issues, but we apply our own law to issues of substantive patent law." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000). Under Sixth Circuit law, a district court's grant of judgment as a matter of law under Federal Rule of Civil Procedure 50 is reviewed *de novo*. *Kusens v. Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006). "The Federal Rules of Civil Procedure authorize courts to enter judgment as a matter of law against a plaintiff upon finding that 'a reasonable jury would not have a legally sufficient evidentiary basis to find' in [its] favor." *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 602 (6th Cir. 2018) (quoting Fed. R. Civ. P. 50). "In making such a determination, the courts must view the evidence in the light most favorable to the non-movant, granting all reasonable inferences in [its] favor." *Id.* In reviewing decisions issued pursuant to Federal Rule

of Civil Procedure 52(a), the Sixth Circuit reviews the district court's conclusions of law *de novo*, and its findings of fact for clear error. *S.C. v. Metro. Gov't of Nashville*, 86 F.4th 707, 714 (6th Cir. 2023).

## III. DISCUSSION

On appeal, Coda argues that the district court erred by (1) setting aside the jury's verdict that Coda had five valid trade secrets that were misappropriated by Goodyear, Appellants' Br. 16–40; (2) rejecting Coda's equitable claims for injunctive relief and correction of inventorship of the '586 patent, *id.* at 50–52; (3) concluding that Coda had not raised a reasonable royalty damages theory and declining to give a corresponding jury instruction, *id.* at 40–50; and (4) "suggesting" that laches barred Coda's claims, *id.* at 52–56. Coda also requested that the case be reassigned to another district court judge in the event of a remand. *Id.* at 56–61. Because we affirm the district court's judgment with respect to the trade secret and correction of inventorship claims, we do not address Coda's arguments relating to damages, injunctive relief, laches, and case reassignment. *See id.* at 40–61.

### A.

We first address Coda's argument that the district court erred in concluding that Goodyear was not liable for trade secret misappropriation. Appellants' Br. 23–40. Specifically, Coda challenges the district court's determination that each trade secret was not sufficiently definite, not secret, and/or not used or disclosed by Goodyear. *Id.* We agree with the district court that no reasonable jury

could find that all elements of a trade secret misappropriation claim were satisfied for each asserted trade secret.[2]

We first provide an overview of the Ohio Uniform Trade Secrets Act ("OUTSA"), which governs the trade secret claims in this case. The OUTSA defines "trade secret" as:

> (D) "Trade secret" means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code. § 1333.61(D).

To succeed on a trade secrets misappropriation claim, a plaintiff must show: "(1) the existence of a trade secret; (2) acquisition of the trade secret as the result of a

---

[2] The parties dispute whether trade secret definiteness under the Ohio Uniform Trade Secrets Act is an issue of fact or an issue of law. *See* Appellants' Br. 18–22; Appellees' Br. 44–46. Because we conclude that TS 7, TS 11, TS 20, and TS 24 are not sufficiently definite even under a no reasonable jury standard, resolution of this issue does not affect our conclusion regarding the definiteness of these asserted trade secrets, and we decline to address this issue.

confidential relationship or through improper means; and (3) an unauthorized use of the trade secret." *Novus Grp., LLC v. Prudential Fin., Inc.*, 74 F.4th 424, 427–28 (6th Cir. 2023) (citing *Tomaydo-Tomahhdo L.L.C. v. Vozary*, 82 N.E.3d 1180, 1184 (Ohio Ct. App. 2017); Ohio Rev. Code. § 1333.61(B)(1)).[3] In addition, a trade secret plaintiff must "defin[e] the information for which protection is sought with sufficient definiteness to permit a court to apply the criteria for protection . . . and to determine the fact of an appropriation." *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 380–81 (6th Cir. 2022) (quoting Restatement (Third) of Unfair Competition § 39 cmt. d) (addressing claims under the Kentucky Uniform Trade Secrets Act); *see also* Ohio Rev. Code § 1333.68 (stating the sections of the act "shall be applied and construed to effectuate their general purpose to make uniform the law with respect to their subject among states enacting them.").

i.

We begin with TS 24, the trade secret that served as the primary focus in the parties' briefing and during oral argument. Coda argues that the district court erred in concluding that TS 24 was not defined with sufficient

---

[3] While a regional circuit court's interpretation of the law of states within their borders does not serve as binding precedent upon this court, it is entitled to weight as the court "'better schooled in' the law of the particular State involved." *Whitewater W. Indus., Ltd. v. Alleshouse*, 981 F.3d 1045, 1051 (Fed. Cir. 2020) (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 500 (1985)); *see In re Dow Corning Corp.*, 778 F.3d 545, 549 (6th Cir. 2015) ("Unless the home circuit has 'disregarded clear signals emanating from the state's highest court pointing towards a different rule' we will avoid creating 'the oddity of a split in the circuits over the correct application' of one state's law." (citation omitted)).

particularity and was not kept secret. Appellants' Br. 23–31. We disagree that the district court erred.

We conclude that the district court correctly determined that (1) Coda publicly disclosed the information covered by TS 24, and (2) to the extent that TS 24 covered knowledge not disclosed in Coda's publications, Coda failed to identify TS 24 with sufficient particularity. TS 24 is directed to "Coda's knowledge regarding the optimal location for placement of a pump in a tire," which the trade secret explains is "in the sidewall close to, and above, the rim." *JMOL Decision* at 598. However, Coda disclosed this placement in a 2007 PCT application and a 2008 article published in *Tire Technology*. *See id.* at 603–04; J.A. 252–96 (International Patent Application Publication No. WO 2007/134556 (filed May 23, 2007; published November 29, 2007)); J.A. 23863–67. For example, the 2007 PCT application discloses that a pump can be located "at any place in the wall of the tire . . . or in its vicinity, so for example, in the tread or side wall of the tire." J.A. 274 at col. 21 ll. 1–3; *see, e.g.*, J.A. 289 at Fig. 2(c); J.A. 271–72 at col. 18 l. 27 to col. 19 l. 3 (explaining that the pump can be located in a "lug boss on the tire . . . wall" as shown in Fig. 2(c)). Similarly, the 2008 *Tire Technology* article discloses that "[t]he peristaltic tubing can be implemented in the tire wall . . . as a crevice in the tire sidewall." J.A. 23865; *see, e.g.*, J.A. 23866 at Fig. 4. Mr. Hrabal confirmed this understanding of the two publications at trial. *See, e.g.*, J.A. 15756 at 624:14 ("The lug boss is part of the tire sidewall."); J.A. 15795 at 663:2 ("The lug boss is on the rim near and above the rim."); J.A. 15757 at 625:9–12 ("Q. So locating a peristaltic pump in the tire sidewall near the rim in an area where it cyclically deforms was not a trade secret? A. This is public."). Thus, the district court did not err in concluding that no reasonable jury could find that the information contained in TS 24, as defined by Coda, qualified as a trade secret.

Coda's attempt to differentiate TS 24 from the disclosures in the publications runs into a different obstacle—definiteness. Relying on Mr. Hrabal's trial testimony, Coda asserts that the 2007 PCT application and the 2008 *Tire Technology* article do not disclose a pump that was "part of a *conventional* tire sidewall," Appellants' Br. 26–27 (citing J.A. 15748) (emphasis added), or in the sidewall of a "*standard* tire . . . as they look today, or at the time of this application." J.A. 15956 at 824:8–9; Appellants' Br. 30–31 (citing J.A. 15956–58) (emphasis added). However, these limiting terms are not present in the definition of TS 24, as set forth in Coda's interrogatory responses in compliance with the district court's order to provide "a complete list of the trade secrets (with particularity)."[4] J.A. 2343; *JMOL Decision* at 594–95, 604. We reject Coda's attempt to belatedly introduce additional specificity into the trade secret based on Mr. Hrabal's trial testimony and attorney argument. Coda's insistence that TS 24 contains these additional limitations demonstrates Coda's failure to identify TS 24 with sufficient specificity to "separate the purported trade secret from the other information that was known to the trade." *TLS Mgmt. & Mktg. Servs., LLC v. Rodríguez-Toledo*, 966 F.3d 46, 54 (1st Cir. 2020) (cleaned up); *see Mallet & Co. v. Lacayo*, 16 F.4th 364, 384 (3d Cir. 2021) ("When the breadth of a trade secret description is so far-reaching that it includes publicly available information (like patent disclosures) and admitted industry knowledge, that information is not specific enough to be accorded trade secret status."). We find no reversible error in the district court's determination that TS 24 is not entitled to trade secret status.

---

[4] Notably, the trial court ordered that Coda provide a "closed" recital of the trade secrets in its interrogatory responses. *See* J.A. 2349–50. Coda's briefing contains no indication that it is appealing this order.

ii.

Turning to TS 7, TS 11, and TS 20, Coda argues that the district court erred in concluding that these trade secrets are not identified with sufficient specificity and were not used by Goodyear. Appellants' Br. 31–37. Coda also challenges the determination that TS 11 and TS 20 were also not secret. *Id.* We find no reversible error in the district court's determination that these trade secrets are not sufficiently definite and were not used by Goodyear.[5]

The district court did not err in determining that Coda failed to define TS 7, TS 11, and TS 20 with sufficient particularity. TS 7 covers "Coda's design and development of a multi-purpose interface for transporting air in a self-inflating tire that can" perform a list of ten functions, including "connect[ing]," "go[ing] around or through," and "hold[ing]" other components. *JMOL Decision* at 596. Absent from TS 7, however, is any description of the information for which trade secret protection is sought—the "design and development" knowledge that would enable someone to develop this interface. *Id.* Rather, TS 7 merely describes the functions that can be performed by the final product created by the knowledge in TS 7. Coda's emphasis of Mr. Hrabal's testimony regarding the "specific value" of the interface is misguided as this testimony fails to address the relevant issue at hand—whether the articulation of TS 7 sufficiently defines the "design and development" information. *See* Appellants' Br. 31 (citing J.A. 15559–61;

---

[5] With respect to TS 11 and TS 20, we need not reach the issue of disclosure by Goodyear or secrecy due to our conclusion that Coda fails to prove other required elements of its trade secret misappropriation claim. For the same reason, we do not address the parties' dispute over whether the district court concluded that TS 7 was not secret. *See* Appellants' Br. 32 n.1; Appellees' Br. 51–52; Appellants' Reply Br. 11.

J.A. 15591). Furthermore, the listed functions are described in vague terms with no detail regarding how those functions are carried out. *See, e.g.*, *Caudill Seed*, 53 F.4th at 381 ("[A] plaintiff asserting a combination trade secret over highly complex technical information cannot merely offer 'lists of broad technical concepts identifying categories of information' without showing which information contained within those categories constituted a trade secret." (cleaned up)); *BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 710 (7th Cir. 2006) (explaining that a trade secret "described in general terms . . . will usually be widely known and thus not worth incurring costs to try to conceal and so not a trade secret"). Thus, Coda failed to fully articulate what aspects of TS 7 constituted a protectable trade secret.

As the district court correctly recognized, TS 11 and TS 20 face similar definiteness problems, including that they are "articulated [as] no more than an undifferentiated list of components" described in vague terms and that they contain "no disclosure of what [the claimed] knowledge is and/or what the design or development is." *JMOL Decision* at 606–07; *see id.* at 596–97. For the same reasons explained above with respect to TS 7, the district court did not err in concluding that TS 11 and TS 20 are not sufficiently definite.

Even if TS 7, TS 11, and TS 20 were valid trade secrets, the district court correctly concluded no reasonable jury could find that Goodyear used these trade secrets. As explained, the descriptions of TS 7, TS 11, and TS 20 all include lists of components or functions. With respect to TS 7, Coda challenges the district court's finding that the testimony of its expert, Mr. Coughlin, was vague and failed to identify all ten TS 7 functions in the Goodyear patent that allegedly disclosed TS 7, *see JMOL Decision* at 605, on the basis that "[t]he unauthorized use need not extend to every aspect or feature of the trade secret; use of any substantial portion of the secret is sufficient." Appellants'

Br. 32 (quoting Restatement (Third) of Unfair Competition § 40 cmt. c); *see also Caudill Seed*, 53 F.4th at 385 (rejecting the argument "that trade-secrets law requires showing acquisition of each atom of a combination trade secret"). However, Coda's assertion that the few TS 7 functions identified by Mr. Coughlin as allegedly being in unauthorized use constitute a "substantial portion of the secret" rests on Mr. Coughlin's conclusory assertions that "Goodyear patented a configuration that is essentially a concept of [TS 7's] concept" and a "perfect knock-off of that technology." Appellants' Br. 32 (quoting and modifying J.A. 16250 at 1118:4–9). As Mr. Coughlin's conclusory testimony "is not supported by sufficient facts . . . it cannot support a jury's verdict." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993).

Coda's arguments regarding Goodyear's use of TS 11 and TS 20 fail for similar reasons. With respect to TS 11, Coda argues that Goodyear disclosed substantial aspects of TS 11 in Goodyear's patents and other documents. Appellants' Br. 33 (citing J.A. 16763; J.A. 80–81; J.A. 20017–100 as "disclosing 'passageway' pump, i.e., a tubeless solution"; then citing J.A. 16766–67; J.A. 21664 as disclosing "an elliptical cross section was easiest to pinch"; then citing J.A. 20163; J.A. 20257 (Figure 5-1); J.A. 22193; J.A. 22262 (Figure 5-2) as "showing tubeless solution"). Coda's citations, however, only speak to usage of two of TS 11's eight components. Even if we ignore the lack of evidentiary support for Goodyear's assertion that these two elements constitute "substantial aspects of TS 11," Appellants' Br. 33, Coda fails to refute Goodyear's assertion that these elements were previously publicly disclosed. *See* Appellees' Br. 55; *id.* at 15–16 (citing J.A. 290 (Figs. 3(d)–(f)); J.A. 271 at 18:27–29; J.A. 15768–69 at 636:23–637:4; J.A. 15933 at 801:6–25); Appellants' Reply Br. 11–14. With respect to TS 20, Coda again alleges use of only two of the seven elements in the combination. *See* Appellants' Br. 36–37 ("Goodyear used both the dead space and the recirculation

concepts . . . ." (citing J.A. 15621; J.A. 16762–63)). And Coda similarly fails to refute Goodyear's assertion that these concepts were disclosed in Coda's patent applications and public presentations. *See* Appellees' Br. 16–18 (citing J.A. 24021–63; J.A. 23960; J.A. 23970; J.A. 16258 at 1126:19–25); Appellants' Reply Br. 14–15. For the reasons stated, we conclude that the district court did not err by concluding that no reasonable jury could find that Coda met its burden of proving all elements of its trade secret misappropriation claim based on TS 7, TS 11, and TS 20.

iii.

We now turn to the last trade secret, TS 23. Coda argues that the district court erred in concluding that TS 23 was not used by Goodyear. Appellants' Br. 37–40. We disagree.

Coda presents insufficient evidence for a reasonable jury to find that Goodyear used TS 23. At trial, the only alleged evidence of use presented by Coda was a January 21, 2009 email that did not contain the test results described in TS 23.[6] *See JMOL Decision* at 609; J.A. 23469 (disclosing only the test results of "approximately 6.5A absolute pressure (or 5.5A relative pressure)" (cleaned up)); J.A. 15546 at 414:9–24 (Mr. Hrabal corroborating the test results disclosed in the email).

Coda argues that it is irrelevant "that the specific testing results described in the email and those in TS 23 do not

---

[6] Goodyear claims that none of the test results between TS 23 and the email match. *See* Appellees' Br. 58 (arguing that the email discloses the test result of achieving "6.5A of pressure in Coda's prototype tire," but TS 23 discloses "6.5A from a pump in the *tread*"). As it does not affect our disposition, we assume for the sake of our analysis that matching numerical measurements are indicative of matching test results.

exactly match, because [Mr.] Hrabal testified that he disclosed TS 23 to Goodyear, and Goodyear plainly relied on Coda's testing data." Appellants' Br. 39–40 (citing J.A. 15546–47; J.A. 15584). The testimony Coda relies on, however, does not indicate that Mr. Hrabal disclosed all the testing results in TS 23 to Goodyear. Rather, Mr. Hrabal testified that TS 23 was "related to [the] testing results communicated to Goodyear" and was being asserted in this case, J.A. 15584 at 452:19–24, and that the "post meeting e-mail . . . shows this information about the results" that were discussed at the meeting. J.A. 15546 at 414:9–16 (referencing J.A. 23469). As already discussed, the testing results reflected in the email do not encompass all results covered in TS 23. *See* J.A. 23469. Coda nevertheless argues that there were "numerous other reasonable inferences" that support the jury verdict. Appellants' Br. 39. Namely, Coda argues that the "testing results gave Goodyear further reason to believe in the technology," pointing to a Goodyear presentation that noted that Goodyear had plans to "[i]nitiate next steps from a technology point of view" for its SIT project on January 30, 2009 and subsequently "confirmed that the project was a 'Go'" in late March 2009. *Id.* (citing J.A. 22170–71). We do not agree with Coda that the timing of Goodyear's project launch alone constitutes sufficient evidence from which a reasonable jury could find Goodyear's usage of TS 23, especially when there is no evidence tying TS 23 to the project and no evidence indicating all the information in TS 23 was conveyed to Goodyear.

For the reasons stated, we affirm the district court's judgment as a matter of law with respect to the trade secret claims.

B.

Lastly, we address Coda's challenge to the district court's denial of its claim for correction of inventorship of the '586 patent. Coda argues that the district court erred

with respect to its correction of inventorship claim because it erroneously threw out the jury's verdict under Rule 50(b), and that the district court is bound by any pertinent fact-finding of the jury when deciding equitable claims. *See* Appellants' Br. 50–52. Accordingly, Coda's challenges to the district court's judgments regarding the correction of inventorship and trade secret claims rise and fall together because Coda's sole argument supporting reversal of the district court's denial of correction of inventorship is that the district court improperly granted judgment as a matter of law with respect to Coda's trade secret claims. *See id.* at 50–52 (raising only the argument that the district court's judgment regarding correction of inventorship must be reversed because the district court erred in granting Goodyear's Rule 50(b) motion with respect to the trade secret claims). As we affirmed the district court's judgment that no reasonable jury could find Goodyear liable for trade secret misappropriation, we conclude that the district court's denial of the correction of inventorship claim also was not erroneous.

Moreover, Coda's challenge separately fails because it is premised on the position that the district court improperly ignored the jury's factual findings. *See id.* at 51–52; Appellants' Reply Br. 21–24. In reaching its conclusion that Coda failed to show it was entitled to correction of inventorship of the '586 patent, the district court noted differences between the locations of the pump assembly covered by TS 24 and by the '586 patent claims and determined that the trade secret and patent claims do not cover the same scope. *See Bench Decision* at 587–89. The jury, however, was never asked to compare the scopes of the '586 patent claims and TS 24. *See* J.A. 17996–18002. Accordingly, the district court's finding that TS 24 and the '586 patent claims have different scopes does not conflict with the jury's findings. The district court did not err in concluding that Coda's alleged trade secret is insufficient evidence to show that Mr. Hrabal was the sole inventor of the

’586 patent. *See Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) (“Conception is the touchstone to determining inventorship.”); *REG Synthetic Fuels, LLC v. Neste Oil Oyj*, 841 F.3d 954, 962 (Fed. Cir. 2016) (“Conception must include every feature or limitation of the claimed invention.”). Thus, the district court’s conclusion did not result from erroneously ignoring factual findings made by the jury.

For the reasons stated, we affirm the district court’s judgment regarding Coda’s correction of inventorship claim.

## IV. Conclusion

We have considered Coda’s remaining arguments and find them unpersuasive. We affirm the district court’s judgment.

**AFFIRMED**