# United States Court of Appeals
# for the Federal Circuit

CODA DEVELOPMENT S.R.O., CODA INNOVATIONS S.R.O.,
FRANTISEK HRABAL,

*Plaintiffs-Appellants*,

*v.*

GOODYEAR TIRE & RUBBER COMPANY, ROBERT BENEDICT,
DEFENDANTS-APPELLEES,

*Defendants-Appellees.*

Appeal from the United States District Court for the Northern District of Ohio
in No. 5:15-cv-1572-SL, United States District Court Judge Sara Lioi

## COMBINED PETITION FOR PANEL REHEARING AND
## REHEARING EN BANC OF PLAINTIFFS-APPELLANTS

BOYD CLOERN
LEAH QUADRINO
CHRISTOPHER A. SUAREZ
SCOTT M. RICHEY
JOSEPH F. ECKER
STEPTOE LLP
    1330 Connecticut Ave., N.W.
    Washington, DC 20036
    (202) 429-3000
    bcloern@steptoe.com

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, undersigned counsel for plaintiffs-appellants certifies the following:

1.    The full name of the entities represented by me are Coda Development s.r.o, Coda Innovations s.r.o, and Frantisek Hrabal.

2.    There are no additional real parties in interest.

3.    There are no additional parent corporation or publicly held companies that own 10 percent or more of the stock of the entities represented by me.

4.    Other than the individuals who have already entered an appearance in this court, the following individuals appeared for the entities in the proceedings below or are expected to appear in this court for the entities:

**Of (or formerly of) Steptoe LLP**: Dwight J. Draughon, Jr., John Caracappa, David H. Kwasniewski, James R. Nuttall, Katherine D. Cappaert, Erica L. Fruiterman, Jeremy S. Goldkind, Stacie H. Hartman, Julie C. Amadeo, Charles G. Cole, Michael E. Flynn-O'Brien, William F. Abrams.

**Of Roetzel & Andress, LPA**: Emily K. Anglewicz, Jessica A. Lopez, Ronald S. Kopp, Stephen W. Funk.

**Of Finnegan, Henderson, Farabow, Garrett, & Dunner, LLP:** Timothy P. McAnulty, Kassandra M. Officer

**Of Kalish Law LLC**: Alexander B. Reich

**Of Williams Simons & Landis PLLC**: Michael Simons, Abdulrahman Althebaity

**Of Tucker Ellis LLP:** Lindsey E. Sacher

**Of Kasowitz LLP:** Steven C. Carlson, J. Michael Wilson, Kevin M. Pasquinelli, and Paul J. Zoeller.

**Of Calfee, Halter, & Griswold LLP:** Tracy Scott Johnson, Mitchell G. Blair.

5.    Other than the previous appeal in this case (No. 18-1023) before Judges Prost, Wallach, and Hughes, *Coda Dev. S.R.O v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1353 (Fed. Cir. 2019), there are no related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a).

6.    There are no applicable organizational victims in criminal cases or bankruptcy case debtors or trustees related to this proceeding.

/s/BOYD CLOERN
BOYD CLOERN

# **TABLE OF CONTENTS**

STATEMENT OF COUNSEL ...................................................................v

PRELIMINARY STATEMENT ...........................................................1

ARGUMENT .......................................................................................5

I.   The Panel Erred By Limiting its Analysis to Certain Discovery Responses and Ignoring the Content of those Responses and Key Evidence...................................................................................5

II.   The Panel Failed to Consider Trial Evidence on Which the Jury Reasonably Relied, Contradicting the No-Reasonable-Jury Standard............8

III.  The Panel's Decision Has Negative Implications For Trade Secret Law........17

CONCLUSION ................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AtriCure v. Jian Meng*,
   842 F.App'x 974 (6th Cir. 2021) ........................................................................8

*Caudill Seed v. Jarrow Formulas*,
   53 F.4th 368 (6th Cir. 2022) ............................................................................8

*Coda Dev. v. Goodyear*,
   916 F.3d 1350 (Fed. Cir. 2019) .......................................................................9

*Coda v. Goodyear*,
   No. 5:15-cv-01572 (N.D. Ohio), ECF No. 262 ................................................8

*Kewanee Oil Co. v. Bicron Corp.*,
   416 U.S. 470 (1974)........................................................................................17

*Mallet & Co. v. Lacayo*,
   16 F.4th 364 (3d Cir. 2021) .......................................................................13, 14

*Olaplex, Inc. v. L'Oréal USA, Inc.*,
   855 F. App'x 701 (Fed. Cir. 2021) ..................................................................8

*Quintara Biosciences v. Ruifeng Biztech*,
   149 F.4th 1081 (9th Cir. 2025) ........................................................................8

*TLS Mgmt. v. Rodríguez-Toledo*,
   966 F.3d 46 (1st Cir. 2020).......................................................................13, 14

# STATEMENT OF COUNSEL

Based on my professional judgment, I believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance:

1) Whether this Court can create new law, unsupported by precedent or statute, that expressly limits evidence of a trade secret to specific language used in a "closed" interrogatory response (much like a patent claim), and excludes nearly the entire record of evidence properly admitted at trial confirming each required element of the trade secret, where the defendant had ample notice of that evidence throughout discovery and did not object to its admission at trial;

2) Whether, under the "no reasonable jury standard," this Court can overturn a jury verdict finding on clear and convincing evidence that a party willfully and maliciously misappropriated valid trade secrets (a question of fact) while expressly excluding nearly all of the trial record evidence that jury considered other than language from an interrogatory response.

3) Whether this Court's panel decision improperly imported patent law principles to trade secret law, even though trade secret law and patent law serve entirely different purposes and trade secrets present questions of fact for a jury to decide.

Based on my professional judgment, I believe the panel decision is contrary to at least the following decisions of the Supreme Court of the United States and precedents of this Court: *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974); *Olaplex, Inc. v. L'Oréal USA, Inc.*, 855 F. App'x 701 (Fed. Cir. 2021); *Coda Development S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350 (Fed. Cir. 2019).

/s/BOYD CLOERN
BOYD CLOERN

# PRELIMINARY STATEMENT

The current issue in trade secret law is what a plaintiff's obligations are to identify its trade secrets. The panel's decision creates dangerous precedent on that legal issue, which is hotly debated and developing.

Here, the panel held that "no reasonable jury" could have found the existence of Coda's trade secrets. That is error because the panel refused to consider evidence the jury relied on to reach its conclusion, and instead considered only Coda's response to Interrogatory No. 2, seeking a closed trade secret list. The panel compared that list to Coda's prior publications to set aside the verdict. It thus treated Coda's interrogatory response like an immutable patent claim, brushing aside Coda's trial evidence distinguishing its trade secrets from its prior disclosures.

Trade secret cases are fact-driven. The existence of a trade secret is a fact question, and the district court properly instructed the jury on the elements— including that a trade secret must be "definite" and not "generally known." The jury found Goodyear maliciously misappropriated five of Coda's trade secrets, which it separately found were stated with particularity and not generally known.

There was substantial evidence at trial about what Coda's trade secrets were and how they differed from Coda's own prior publications, including testimony That evidence included testimony and documents, from both Coda and Goodyear, about Coda's trade secret for placement of a peristaltic pump in a self-inflating tire.

1

The concept of a self-inflating tire, including ones using peristaltic tubes as a pump for inflation, was known for years. Under load, a tire's rubber sidewall bulges (deforms) between the rim and the ground. The conventional wisdom in the industry was that a tube placed in the space between the sidewall and the rim would be pinched by the deformation of the sidewall, thereby creating a peristaltic pumping action as the tire rolls.

Importantly, the industry believed that the tube must be placed in-between the tire and the rim, such that the tube is crushed against the rim, to create sufficient pinching force. Coda's prior publications disclosed such "rim crush" pump locations, but the industry had concerns about such embodiments due to the potential for chafing by contact with the rim. Blue Br. 25.

In response to those concerns, Coda identified a new location for a peristaltic pump that it kept as a trade secret. That location (identified as TS24) is in the sidewall above the rim, where the cyclic flexion of the sidewall pinches the tube, and depicted in the figure below from Coda's files. *Id*.



Figure 3-1. SIT Embodiment 1: Within Tire

That the deformation of the sidewall alone had sufficient force to pinch the tube, without relying on rim crush, was a key innovation. Indeed, after learning this from Coda, Goodyear sought and received patents on this invention, along with millions in funding from the Department of Energy (DOE) to commercialize it. Appx65-84, Blue Br. 28-30. Goodyear's documents seeking patent coverage and government grants name this as a key, novel innovation over Coda's prior art "rim crush" embodiments. Blue Br. 28-30.

The panel refused to consider any of this evidence. Instead, it compared Coda's prior public disclosures against the "definition" of TS24 in Interrogatory No. 2, which it said did not include certain "limitations" (a patent term) on which Coda relied at trial to distinguish that trade secret from the prior art. Panel Op. 4, 10. But providing a "closed" list of trade secrets in discovery does not convert them into patent claims or foreclose other evidence establishing the existence of a trade secret.

While patents are issued by the government, trade secrets must be proven at

trial, including by differentiating the trade secret from what was generally known in the industry. Providing evidence distinguishing Coda's asserted trade secret from what is generally known is not importing "limitations" into the definition of TS24.

The purpose of requiring trade secret plaintiffs to articulate a list of trade secrets with particularity is to provide notice so defendants can discover how that alleged trade secret differs from general knowledge. The discovery order at issue here (and which the panel relied on) was directed to that notice function. And here, the trial evidence of the secret pump location in a tire sidewall, close to and above the rim, and its distinctions over the prior art, were repeatedly disclosed to Goodyear from the First Amended Complaint (FAC) and throughout discovery, including in pleadings, other interrogatory responses, expert reports, and more. Goodyear presented and cross-examined witnesses at trial while armed with the information it needed to pursue its defenses. Goodyear did not seek to exclude or object to Coda's evidence about TS24 at trial, and the court admitted it. All of that evidence was available to the jury—and no ruling, until the panel's opinion, has held otherwise.

On its face, the panel's ruling holds that a closed list of trade secrets produced during discovery for purposes of giving notice can effectively curtail any trial evidence about those disclosed trade secrets. That replaces the notice-based function of an interrogatory response with a patent-like construction of a trade secret. Such a rule runs counter to trade secret law, which requires plaintiffs to provide

4

evidentiary proof of mandatory elements and a jury to make factual findings about that evidence, which occurred here and was wrongly ignored.

## ARGUMENT

### I. The Panel Erred By Limiting its Analysis to Certain Discovery Responses and Ignoring the Content of those Responses and Key Evidence

The panel excluded from consideration relevant evidence in the record and instead applied a patent-like construction of a discovery response provided years before trial. Panel Op. 10. This core error mandates rehearing.

At the threshold, the panel relied on a discovery order to exclude all evidence of TS24 (including the specific pump location Hrabal identified) beyond the words of an interrogatory response. *Id.* 10 n.4. But this contradicts the order itself. The district court's order addressed a dispute over Goodyear's interrogatories. *Id.* (citing Appx2349-2350). In Interrogatory No. 1, Goodyear sought a description of everything Coda contends it disclosed to Goodyear during two confidential meetings in 2009. In Interrogatory No. 2, Goodyear sought a list of Coda's trade secrets. The district court ordered Coda to respond to both and required Coda to "supply a closed response to Interrogatory No. 1, supplying sufficient specificity and description to permit defendants to know what discovery will be relevant and what specific claims of trade secret misappropriation they must defend against." *See* Appx2349-50. The ruling was about *notice*—to let Goodyear know "what discovery will be relevant"

and what claims it "must defend against."[1]  Appx2349.  The order and Coda's responses were thus a precursor to discovery *about those responses* and a trial.

Coda provided notice.  Coda's detailed response to Interrogatory No. 1 (not cited by the panel but produced to Goodyear at the same time as the list of trade secrets in response to Interrogatory No. 2) describes multiple different pump tube locations, distinguishing them from each other.  SAppx90-112.  When discussing the various options, the response states that, during the Goodyear meeting, "Hrabal pointed to the prototype, to the region of the tire sidewall just above the rim but below the midpoint, the same region to which Mr. Hrabal had attached the epoxy sidewall extension ***to capture the movement to compress the pump tube***."[2] SAppx96-97.  "Hrabal also explained to Goodyear that moving the pump relative to the tire bead (axially or radially) affect the leverage and compressive forces exerted on the pump, including the ability to open and close the tube."  SAppx97.  The response has several paragraphs explaining these distinctions—making it clear that the TS24 tube placement does not rely on rim crush to actuate the pump.  It relies on the compressive force of the tire itself.

There is also no question whether Goodyear had sufficient notice, prior to

---

[1] The panel noted that Coda did not appeal the discovery order (Panel Op. 10 n.4), but Coda had no reason to do so because the order was about notice and, unlike here, it was not used to exclude Coda's evidence at trial.

[2] All emphases added unless otherwise noted.

6

trial, about Coda's claims—including how Coda distinguished TS24 from the prior art. Coda provided Goodyear that notice in the FAC, in interrogatory responses, in its expert reports, and through summary judgment briefing in 2020 and 2021. Appx2082-2084, Appx2110 and SAppx00047-48, SAppx66-67 (FAC distinguishing 2007 PCT and 2008 Tire Tech flap article (Coda prior publications) solution "on the tire rim" from trade secret "tube in a groove in the tire sidewall" that is "above the rim"); SAppx00096-97 (Interrogatory No. 1 response distinguishing "flap tubes" "between the tire and the rim" from TS24 location "in the sidewall near and above the rim"); Appx06795-6797 and SAppx00500-501, SAppx506-511, SAppx518-519 (expert report distinguishing TS24 location from "ancillary structure" (i.e., flap solution) and "lug boss" solutions disclosed in Coda prior publications which are "actuated by the pinching forces between the tire and the rim"); SAppx608-611; SAppx614-618, SAppx622-623, SAppx634-638, SAppx640 (Coda summary judgment brief distinguishing TS24 and 2007 PCT); Appx15949-15954 & Appx15956-15959, Blue Br. 23-30. These submissions confirmed what Hrabal described in his trial testimony: that he innovated over the prior art's "flap" and "lug boss" solutions by embedding the tube in a groove in the tire sidewall "above the rim" to use both sides of a tire sidewall for inflation, rather than the pinching of the tire against the rim. *Id.*

Goodyear tried to contradict Coda's evidence and vigorously cross-examined

Hrabal. But it did not seek to exclude any of Coda's evidence about TS24, including how Coda distinguished it from the prior art. Moreover, in its summary judgment order, the Court reiterated that its discovery order had "intended that . . . Goodyear be placed on notice of Coda's claims," and denied summary judgment "***given the entirety of the record***."[3] The jury heard the entire record, and concluded that Goodyear willfully and maliciously stole Coda's valid TS24.

More fundamentally, trade secret definiteness is a factual question for a jury, not judges. *Olaplex, Inc. v. L'Oréal USA, Inc.*, 855 F. App'x 701, 703, 705-06 (Fed. Cir. 2021); *AtriCure v. Jian Meng*, 842 F.App'x 974, 979 (6th Cir. 2021); *Caudill Seed v. Jarrow Formulas*, 53 F.4th 368, 382 (6th Cir. 2022); *Quintara Biosciences v. Ruifeng Biztech*, 149 F.4th 1081, 1085 (9th Cir. 2025) (for DTSA "[w]hether a trade secret is identified with 'sufficient particularity' is a question of fact"); Blue Br. 18-22; Gray Br. 2-3. Interrogatory responses are the beginning—not the end.

## II. The Panel Failed to Consider Trial Evidence on Which the Jury Reasonably Relied, Contradicting the No-Reasonable-Jury Standard

By constraining the definition of TS24 to a patent-like construction of an interrogatory—and failing to consider the response that was central to the discovery order it cites—the panel failed to consider the "entirety of the record," contrary to the no-reasonable-jury standard. In doing so, it ignored the well-trodden distinction

---

[3] *Coda v. Goodyear*, No. 5:15-cv-01572 (N.D. Ohio), ECF No. 262, at 19.

at trial between the TS24 pump location (above the rim in the sidewall, that relied on flexion of the sidewall itself for inflation), and "generally known" pump location concepts, such as "flaps" and "lug bosses" (between the rim and the sidewall, that relied on rim crush). It ignored both Coda's and Goodyear's distinctions between the pump location trade secret and the prior art. These same distinctions were before a different panel of this Court several years ago, which recognized that whether Coda's prior publications "actually disclosed th[e] alleged novel trade secrets" such as the pump location "was a reasonably (indeed, hotly) disputed factual issue" disclosed in the FAC. *Coda Dev. v. Goodyear*, 916 F.3d 1350, 1357, 1360 (Fed. Cir. 2019). The panel here, on the same evidence that corresponded to the allegations of the FAC, arrived at its conclusion that TS24 was not generally known by limiting TS24 in a patent-like manner and ignoring Coda's evidence.

The trial evidence showed that, in confidential meetings in January and June of 2009, Coda shared with Goodyear its idea for an optimal location for a peristaltic pump in a tire sidewall that allowed tires to self-inflate, with the hope to commercialize that idea with Goodyear. Blue Br. 5. That location was in a tire sidewall ***above the rim*** where it would be "pinched by . . . both sides by the tire" as opposed to a location between the tire and wheel rim, as reflected and memorialized in the figure below. Appx15493-15494. This diagram, admitted into evidence and featured in the FAC as part of Coda's explanation of the trade secret disclosed to

9

Goodyear (Figure 3-1), showed the secret pump location in a groove "which is close [to] and above the rim in the location of the cyclical flexion," as Hrabal confirmed. Appx15484-15486.



**Figure 3-1.** SIT Embodiment 1: Within Tire

Appx23688; SAppx44-48 (¶¶95-106) (recounting communications with Goodyear about trade secret pump location "just above the rim but below the midpoint," which relied on "flexion" from only the tire sidewall to inflate the tire, and showing "what one of these embodiments would look like" in Figure 3-1). Hrabal repeatedly distinguished the above, proprietary location disclosed to Goodyear from "flap" and "lug boss" solutions he disclosed in a 2007 PCT and a *Tire Technology* article. Appx15497-15498, Appx15743. These solutions relied not on the flexion of the sidewall, but instead on the "crushing" between the tire and the rim, to self-inflate, because those structures are literally "on the rim," not above it. *E.g.*, Appx15493-15494, Appx15498, Appx15784, Appx15785, Appx15791-15792.

This was not just Coda's view. Within weeks of being told Coda's secrets in

the first half of 2009, Goodyear and its employee, Robert Benedict, exploited Coda's self-inflating tire technology, including Hrabal's disclosed pump location. Appx15470-15472. In August 2009, Benedict generated the below invention disclosure distinguishing Coda's "[n]ew" pump location from "Prior Art," where the "[t]ube [was] closed by contact between tire and rim":



Appx20800. Goodyear made this same distinction to the DOE shortly thereafter, where it noted that the "innovative pump location" shown in Figure 6 below (which relied on the "pinch point of the pump *in[] the tire cross section*," above the rim) was distinguishable over "[p]rior peristaltic pump efforts (e.g. CODA) [which] rely on the rim flange to provide a pinch point."



Figure 3: Difference in peristaltic pump location between (a) prior art and (b) AMT proposal

Appx21656, Appx21661. At trial, Coda identified this very same figure on the right (Figure 6) as TS24, showing "the location that [Hrabal] told Dr. Benedict about" as "the peristaltic pump which is located close and above the rim" and "in the location of the cyclical flexion." Appx15473 (referring to Appx00071, Appx00072). Figures 5 and 6 showing the distinction between TS24 over the prior art were incorporated into Goodyear's patent. Appx71-72. And both Figure 6 and Figure 3-1 illustrate a consistent, and "definite," TS24 pump location above the rim in the tire sidewall in the location of cyclical flexion that is pinched by the sidewall, not the rim.

The jury heard this evidence. It was instructed that Coda had "the burden of defining the information for which protection is sought with sufficient definiteness," and that there was no liability if "any of the items that Coda is claiming to be trade secrets are actually in the public domain." Appx17873-17875. The jury found that Goodyear willfully and maliciously misappropriated five valid trade secrets,

including TS24, which referred to the "optimal location for placement of a pump in a tire for tire manufacturers" discussed above, "namely, in the sidewall close to and above the rim where . . . the tire cyclically deforms in response to deformation." Appx17881-17882; Appx17997-18001. It also found that other trade secrets were not misappropriated. Appx17997-18001. The jury awarded $2.8 million in compensatory damages and $61.2 million in punitive damages. Appx18000-18001. The district court found there was "sufficient evidence presented to the jury to support the jury's finding of actual malice." Appx28 (n.18).

The above evidence that distinguished Coda's pump location trade secret from the prior art was more than sufficient to allow a reasonable jury to conclude that Coda's pump location trade secret was valid. But the panel (like Goodyear in the Red Brief) completely ignored that evidence (and the evidence of the precise TS location shown in Figure 3-1) and acted as though that evidence did not exist despite it having been presented thoroughly in both the Blue and Gray briefs. Blue Br. 4-6, 22-40; Gray Br. 7-17. That alone underscores that rehearing is necessary.

The panel cites no authority to overturn a jury verdict grounded in properly admitted trial evidence. It cited only *TLS Management* and *Mallet*; neither applies here. *TLS* involved a ***non-jury*** trial; further, the trade secret plaintiff "could not articulate what aspects of the CPRs" at issue "qualified as a trade secret but instead generally referred th[e] court to the record" despite being "repeatedly asked" to do

so. *TLS Mgmt. v. Rodríguez-Toledo*, 966 F.3d 46, 53 (1st Cir. 2020). Thus, "TLS did not separate the [purported] trade secrets from the other information . . . [that was] known to the trade." *Id.* at 54. In *Mallet*, the Court overturned a preliminary injunction because "***the District Court*** did not articulate with particularity the information to which it accorded trade secret status," which had precluded "informed appellate review." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 369, 384-85 (3d Cir. 2021) (emphasis added). Here, by contrast, Coda repeatedly identified the secret pump location it disclosed and identified evidence that distinguished that secret from prior art. *Supra*, pp. 8-12.

This same distinction between the TS24 pump location over the prior art applies to the portions of the 2007 PCT and the *Tire Technology* article on which the panel relied to assert that TS24 was "generally known"; they show examples where a pump could be housed in a "lug boss" (Figure 2.c of the PCT) or "flap" (Figure 4 of *Tire Technology*) that are pressed against the rim as shown below. Panel Op. 10 (citing Appx289 (Fig.2c) & Appx23866 (Fig.4)); Appx271 ("[A] lug boss on tire wall is shown on fig 2.c."). In Figure 4 (the flap) the "crevice of the tire wall" is "seal[ed]" against the rim "during wheel assembly," and "[t]he pressure between tire and rim is up to 10 times more than the tire pressure." Appx23866. As Hrabal explained, "[t]his flap solution is being crushed against the rim"—a reasonable jury thus could have concluded that flap solutions were not "in the sidewall close to, and

14

above, the rim where the tire cyclically deforms in response to deformation," in contrast to Figures 3-1 and 6 (above) that correspond to the TS24 pump location. Appx15493; Appx15951 (2007 PCT describes "flap solution that we described between the tire and the rim").



Figure 4: A closer look at the crevice in the tire wall and its sealing during wheel assembly. The pressure between tire and rim is up to 10 times more than the tire pressure

While the panel opinion cherrypicked certain testimony about lug bosses (*see* Panel Op. 9), it ignores Hrabal's testimony that in "figure 2C, the lug boss" is in the "bead around" the tire and not above the rim. Appx15957. It was on the rim because, as with the flap, "[w]ithout this crush against the rim, [the lug boss] will not seal." Appx15953. Hrabal repeatedly reiterated that the lug boss is "on the rim" for the functional purpose of sealing the pump, and thus did not disclose the pump location of TS24. *See* Blue Br. 27 (citing Appx15785, Appx15791, Appx15792 and showing lug boss is "on the rim," not above the rim). From this, a reasonable jury could have easily concluded that the TS24 pump location "above the rim" was not in the prior

art. *Supra*, pp. 5-7.[4]

The panel opinion also referred to a generic statement in the 2007 PCT that a pump "can be located 'at any place in the wall of the tire . . . or in its vicinity, so for example, in the tread or side wall of the tire.'" Panel Op. 9. But that disclosure provides no indication of what was "generally known" in the industry as trade secret law requires; the only thing the 2007 PCT showed was "generally known" were pump locations between the tire and rim that relied on rim crush; nothing in the 2007 PCT specifically identified the secret pump location Hrabal identified at trial. A reasonable jury could have, and did, credit the view that the 2007 PCT was about the "flap" and "lug boss" solutions that were distinct from TS24.

To the extent that the panel purported to address the distinctions between Coda's proprietary pump location, it suggested that "definiteness" was the problem based on the alleged "additional limitations" relating to the trade secret being part of a "conventional" or "standard" tire sidewall. Panel Op. 10. But it ignored that the prior art disclosures on which it relied pertaining to flaps and "lug bosses" were not "above the rim" as confirmed by the fact that they relied on the crush between the tire and the rim. That distinction was the focal point of Coda's briefing and of Goodyear's own admissions. Blue Br. 23-30; Gray Br. 7-10. And a reasonable jury

---

[4] The panel noted one instance where Hrabal testified that "[t]he lug boss is on the rim near and above the rim," but ignored his testimony immediately thereafter that the lug boss "***has to be on the rim***." Appx15795.

certainly could have found that the specific pump locations shown in Figure 3-1 and Figure 6 were "definite."

## III. The Panel's Decision Has Negative Implications For Trade Secret Law

The panel's decision has potentially broad, negative implications for trade secret cases overall. Trade secret law has critical consequences to innovation. The OUTSA was the subject of the Supreme Court's 1974 decision in *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 481-82 (1974), which noted:

> ***The maintenance of standards of commercial ethics*** and the encouragement of invention are the broadly stated policies behind trade secret law. ***The necessity of good faith and honest, fair dealing, is the very life and spirit of the commercial world***.

*Id.* Further, "[t]rade secret law promotes the sharing of knowledge," and "permits the individual inventor to reap the rewards of his labor by contracting with a company large enough to develop and exploit it." *Id.* at 493.

The panel's ruling undermines this framework. It suggests that a plaintiff's entire case may be tied to the notice of trade secrets provided at the outset of discovery—without regard to the evidence developed during discovery and properly admitted at trial, and applying a patent-like construction that goes beyond the fair-notice standard of discovery. That is not even what the district court here ordered, as evidenced by the terms of the discovery order and its JMOL decision relying on its own analysis of trial evidence (not interrogatory responses).

Moreover, trade secret and patent law are different. Trade secrets must be

17

affirmatively proven with admissible evidence at trial. There is no fixed, immutable format in which to present that evidence. The notice provided in a written discovery response to a defendant describing a trade secret claim, without more, will often be insufficient to meet the plaintiff's burden of proof at trial. But a patent is a fixed document already in existence.

Here, the panel's decision sanitizes Goodyear's willful misconduct and reduces incentives to share secrets by injecting patent-like principles into trade secret law. It sends an unfortunate message that well-resourced companies like Goodyear can play the long game, and even lose at trial, yet be saved on appeal.

## CONCLUSION

The Court should grant panel rehearing or rehearing en banc.


January 28, 2026

*/s/ Boyd Cloern*
BOYD CLOERN
LEAH QUADRINO
CHRISTOPHER A. SUAREZ
SCOTT M. RICHEY
JOSEPH F. ECKER
STEPTOE LLP
   1330 Connecticut Ave., N.W.
   Washington, DC 20036
   (202) 429-3000
   bcloern@steptoe.com

*Counsel for Plaintiffs-Appellants*

# ADDENDUM

# United States Court of Appeals for the Federal Circuit

---

**CODA DEVELOPMENT S.R.O., CODA INNOVATIONS S.R.O., FRANTISEK HRABAL,**
*Plaintiffs-Appellants*

**v.**

**GOODYEAR TIRE & RUBBER COMPANY, ROBERT BENEDICT,**
*Defendants-Appellees*

---

2023-1880

---

Appeal from the United States District Court for the Northern District of Ohio in No. 5:15-cv-01572-SL, Judge Sara Lioi.

---

Decided: December 8, 2025

---

BOYD CLOERN, Steptoe LLP, Washington, DC, argued for plaintiffs-appellants. Also represented by JOSEPH F. ECKER, LEAH MARGARET QUADRINO, SCOTT RICHEY, CHRISTOPHER ALAN SUAREZ.

GREGORY A. CASTANIAS, Jones Day, Washington, DC, argued for defendants-appellees. Also represented by TRACY A. STITT; JOHN CHARLES EVANS, CALVIN GRIFFITH,

THOMAS KOGLMAN, DAVID MICHAEL MAIORANA, Cleveland, OH.

————————————

Before LOURIE, DYK, and CUNNINGHAM, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge*.

Coda Development s.r.o., Coda Innovations s.r.o., and Frantisek Hrabal (collectively, "Coda") appeal a decision of the United States District Court for the Northern District of Ohio holding that Goodyear Tire & Rubber Company and Robert Benedict (collectively, "Goodyear") were entitled to judgment as a matter of law of no trade secret misappropriation and denying correction of inventorship of Goodyear's U.S. Patent No. 8,042,586 (the "'586 patent"). *See Coda Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, 667 F. Supp. 3d 590, 611 (N.D. Ohio 2023) ("*JMOL Decision*"); *Coda Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, 667 F. Supp. 3d 567, 589 (N.D. Ohio 2023) ("*Bench Decision*"). For the reasons below, we affirm.

## I.    BACKGROUND

Coda sued Goodyear in the United States District Court for the Northern District of Ohio, raising, among other things, claims for trade secret misappropriation under Ohio state law and correction of inventorship of the '586 patent.[1] *JMOL Decision* at 593; J.A. 158–96. Both the asserted trade secrets and the '586 patent relate to self-

————————————

[1]    This appeal marks the second time that this case is before this court. Previously, we vacated the district court's dismissal and remanded the case to the district court to allow Coda to amend its complaint. *CODA Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1362 (Fed. Cir. 2019). The amended complaint similarly raised trade secret and correction of inventorship claims. *See JMOL Decision* at 594 & n.3; J.A. 1120; J.A. 1943–2131.

inflating tire ("SIT") technology. *See, e.g.*, *JMOL Decision* at 595–97; '586 patent col. 1 ll. 5–7; *id.* at col. 10 ll. 29–54.

The district court held a jury trial on Coda's trade secret claims in September 2022. *JMOL Decision* at 598. The jury found that Goodyear had misappropriated five of Coda's alleged trade secrets and awarded Coda $2.8 million in compensatory damages and $61.2 million in punitive damages. *Id.* at 598–99; J.A. 17997–8001. These five alleged trade secrets, the only ones at issue on appeal, were defined by Coda as described below:

> TS 7: Coda's design and development of a multi-purpose interface for transporting air in a self-inflating tire that can connect to the air source, connect to the tire interior, connect to the peristaltic pump, serve as an end to the peristaltic pump, connect to the regulator, carry the regulator, go around or through the bead, go around or through the tire layers, click to the bead and hold the filter;

> TS 11: Coda's knowledge of how to design and develop self-inflating tire pump and groove solutions, consisting of round pump tubing in an outward-facing groove with straight, angled interior geometry; pump tubing with geometry that interlocks with its seat; pump tubing with elliptical interior cross-section; variant pump tube, groove and chamber dimensions, size and materials; pump tube and groove design to minimize internal friction; a "tubeless" pump solution (i.e., a pump that may compose an integral part of tire); cross-section designs that minimize stress on compression in order to improve durability; and tubing with reinforced wall;

> TS 20: Coda's knowledge of how to design and develop self-inflating tire systems with circulating and non-circulating pump variations, comprised of the disclosure of technical information through observations and descriptions of the three-way valve

regulator, and explanations of the function and air-
paths for the states of recirculation and inflation;
closure elements related to recirculation systems
and a pressurized air reservoir that would permit
the storage of air within the system without the
need to engage the pump tube with each tire revo-
lution; recirculation at different pressures, such as
ambient pressure; recirculation through various
paths, such as through the tire, the atmosphere
and the pump tube; the safety benefit of recirculat-
ing around the pump tube isolated from the tire
cavity; a check valve on intake (between the pump
tube and the atmosphere) to only permit air in
when pressure in the pump tube falls below atmos-
pheric pressure; and a check valve on output (be-
tween the pump tube and tire interior) to only
allow air into the tire when pressure in the pump
tube exceeds the tire pressure;

TS 23:  Coda's development of a functional self-in-
flating tire as demonstrated by the test results con-
firming that the tire pump can generate pressure
higher than the pressure in the tire cavity, through
the test results showing that the pump placed on
the tread could generate 6.5 absolute atmospheres
of pressure (5.5 relative atmospheres); the test re-
sults showing that the tube-in-groove pump of the
prototype could generate 3.3 absolute atmospheres
of pressure; and test results that demonstrated
that the Flap Tubes could generate 1 relative at-
mosphere of pressure;

TS 24:  Coda's knowledge regarding the optimal lo-
cation for placement of a pump in a tire for tire
manufacturers, namely, in the sidewall close to,
and above, the rim where the tire cyclically deforms
in response to deformation.

*JMOL Decision* at 596–98, 611 (cleaned up); Appellants' Br. 16–40.

Following trial, the district court granted Goodyear's motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), concluding that (1) TS 7, TS 11, TS 20, and TS 24 are not sufficiently definite; (2) TS 11, TS 20, TS 23, and TS 24 are not "secret;" (3) TS 7, TS 11, TS 20, and TS 23 had never been used or disclosed by Goodyear; and (4) TS 11 and TS 20 were never conveyed by Coda to Goodyear. *JMOL Decision* at 602–11. After considering the parties' briefs in lieu of a bench trial, *see Bench Decision* at 572–73; *see also id.* at 571 (citing Fed. R. Civ. P. 52(a)(1)), the trial court denied Coda's correction of inventorship claim and denied its other pertinent requests for relief. *Id.* at 589.

Coda timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. STANDARD OF REVIEW

"In reviewing district court judgments, we apply the law of the circuit in which the district court sits with respect to nonpatent issues, but we apply our own law to issues of substantive patent law." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000). Under Sixth Circuit law, a district court's grant of judgment as a matter of law under Federal Rule of Civil Procedure 50 is reviewed *de novo*. *Kusens v. Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006). "The Federal Rules of Civil Procedure authorize courts to enter judgment as a matter of law against a plaintiff upon finding that 'a reasonable jury would not have a legally sufficient evidentiary basis to find' in [its] favor." *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 602 (6th Cir. 2018) (quoting Fed. R. Civ. P. 50). "In making such a determination, the courts must view the evidence in the light most favorable to the non-movant, granting all reasonable inferences in [its] favor." *Id.* In reviewing decisions issued pursuant to Federal Rule

of Civil Procedure 52(a), the Sixth Circuit reviews the district court's conclusions of law *de novo*, and its findings of fact for clear error. *S.C. v. Metro. Gov't of Nashville*, 86 F.4th 707, 714 (6th Cir. 2023).

## III. DISCUSSION

On appeal, Coda argues that the district court erred by (1) setting aside the jury's verdict that Coda had five valid trade secrets that were misappropriated by Goodyear, Appellants' Br. 16–40; (2) rejecting Coda's equitable claims for injunctive relief and correction of inventorship of the '586 patent, *id.* at 50–52; (3) concluding that Coda had not raised a reasonable royalty damages theory and declining to give a corresponding jury instruction, *id.* at 40–50; and (4) "suggesting" that laches barred Coda's claims, *id.* at 52–56. Coda also requested that the case be reassigned to another district court judge in the event of a remand. *Id.* at 56–61. Because we affirm the district court's judgment with respect to the trade secret and correction of inventorship claims, we do not address Coda's arguments relating to damages, injunctive relief, laches, and case reassignment. *See id.* at 40–61.

### A.

We first address Coda's argument that the district court erred in concluding that Goodyear was not liable for trade secret misappropriation. Appellants' Br. 23–40. Specifically, Coda challenges the district court's determination that each trade secret was not sufficiently definite, not secret, and/or not used or disclosed by Goodyear. *Id.* We agree with the district court that no reasonable jury

CODA DEVELOPMENT S.R.O. v.                                    7
GOODYEAR TIRE & RUBBER COMPANY

could find that all elements of a trade secret misappropriation claim were satisfied for each asserted trade secret.[2]

We first provide an overview of the Ohio Uniform Trade Secrets Act ("OUTSA"), which governs the trade secret claims in this case. The OUTSA defines "trade secret" as:

> (D) "Trade secret" means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code. § 1333.61(D).

To succeed on a trade secrets misappropriation claim, a plaintiff must show: "(1) the existence of a trade secret; (2) acquisition of the trade secret as the result of a

---

[2]    The parties dispute whether trade secret definiteness under the Ohio Uniform Trade Secrets Act is an issue of fact or an issue of law. *See* Appellants' Br. 18–22; Appellees' Br. 44–46. Because we conclude that TS 7, TS 11, TS 20, and TS 24 are not sufficiently definite even under a no reasonable jury standard, resolution of this issue does not affect our conclusion regarding the definiteness of these asserted trade secrets, and we decline to address this issue.

confidential relationship or through improper means; and
(3) an unauthorized use of the trade secret." *Novus Grp.,
LLC v. Prudential Fin., Inc.*, 74 F.4th 424, 427–28 (6th Cir.
2023) (citing *Tomaydo-Tomahhdo L.L.C. v. Vozary*,
82 N.E.3d 1180, 1184 (Ohio Ct. App. 2017); Ohio Rev.
Code. § 1333.61(B)(1)).[3] In addition, a trade secret plaintiff
must "defin[e] the information for which protection is
sought with sufficient definiteness to permit a court to ap-
ply the criteria for protection . . . and to determine the fact
of an appropriation." *Caudill Seed & Warehouse Co. v. Jar-
row Formulas, Inc.*, 53 F.4th 368, 380–81 (6th Cir. 2022)
(quoting Restatement (Third) of Unfair Competition § 39
cmt. d) (addressing claims under the Kentucky Uniform
Trade Secrets Act); *see also* Ohio Rev. Code § 1333.68 (stat-
ing the sections of the act "shall be applied and construed
to effectuate their general purpose to make uniform the law
with respect to their subject among states enacting them.").

i.

We begin with TS 24, the trade secret that served as
the primary focus in the parties' briefing and during oral
argument. Coda argues that the district court erred in con-
cluding that TS 24 was not defined with sufficient

---

[3]    While a regional circuit court's interpretation of
the law of states within their borders does not serve as
binding precedent upon this court, it is entitled to weight
as the court "'better schooled in' the law of the particular
State involved." *Whitewater W. Indus., Ltd. v. Alleshouse*,
981 F.3d 1045, 1051 (Fed. Cir. 2020) (quoting *Brockett
v. Spokane Arcades, Inc.*, 472 U.S. 491, 500 (1985)); *see In
re Dow Corning Corp.*, 778 F.3d 545, 549 (6th Cir. 2015)
("Unless the home circuit has 'disregarded clear signals
emanating from the state's highest court pointing towards
a different rule' we will avoid creating 'the oddity of a split
in the circuits over the correct application' of one state's
law." (citation omitted)).

particularity and was not kept secret.  Appellants' Br. 23–31.  We disagree that the district court erred.

We conclude that the district court correctly determined that (1) Coda publicly disclosed the information covered by TS 24, and (2) to the extent that TS 24 covered knowledge not disclosed in Coda's publications, Coda failed to identify TS 24 with sufficient particularity.  TS 24 is directed to "Coda's knowledge regarding the optimal location for placement of a pump in a tire," which the trade secret explains is "in the sidewall close to, and above, the rim." *JMOL Decision* at 598.  However, Coda disclosed this placement in a 2007 PCT application and a 2008 article published in *Tire Technology*.  *See id.* at 603–04; J.A. 252–96 (International Patent Application Publication No. WO 2007/134556 (filed May 23, 2007; published November 29, 2007)); J.A. 23863–67.  For example, the 2007 PCT application discloses that a pump can be located "at any place in the wall of the tire . . . or in its vicinity, so for example, in the tread or side wall of the tire."  J.A. 274 at col. 21 ll. 1–3; *see, e.g.*, J.A. 289 at Fig. 2(c); J.A. 271–72 at col. 18 l. 27 to col. 19 l. 3 (explaining that the pump can be located in a "lug boss on the tire . . . wall" as shown in Fig. 2(c)).  Similarly, the 2008 *Tire Technology* article discloses that "[t]he peristaltic tubing can be implemented in the tire wall . . . as a crevice in the tire sidewall."  J.A. 23865; *see, e.g.*, J.A. 23866 at Fig. 4.  Mr. Hrabal confirmed this understanding of the two publications at trial.  *See, e.g.*, J.A. 15756 at 624:14 ("The lug boss is part of the tire sidewall."); J.A. 15795 at 663:2 ("The lug boss is on the rim near and above the rim."); J.A. 15757 at 625:9–12 ("Q. So locating a peristaltic pump in the tire sidewall near the rim in an area where it cyclically deforms was not a trade secret?  A. This is public.").  Thus, the district court did not err in concluding that no reasonable jury could find that the information contained in TS 24, as defined by Coda, qualified as a trade secret.

Coda's attempt to differentiate TS 24 from the disclosures in the publications runs into a different obstacle—definiteness. Relying on Mr. Hrabal's trial testimony, Coda asserts that the 2007 PCT application and the 2008 *Tire Technology* article do not disclose a pump that was "part of a *conventional* tire sidewall," Appellants' Br. 26–27 (citing J.A. 15748) (emphasis added), or in the sidewall of a "*standard* tire . . . as they look today, or at the time of this application." J.A. 15956 at 824:8–9; Appellants' Br. 30–31 (citing J.A. 15956–58) (emphasis added). However, these limiting terms are not present in the definition of TS 24, as set forth in Coda's interrogatory responses in compliance with the district court's order to provide "a complete list of the trade secrets (with particularity)."[4] J.A. 2343; *JMOL Decision* at 594–95, 604. We reject Coda's attempt to belatedly introduce additional specificity into the trade secret based on Mr. Hrabal's trial testimony and attorney argument. Coda's insistence that TS 24 contains these additional limitations demonstrates Coda's failure to identify TS 24 with sufficient specificity to "separate the purported trade secret from the other information that was known to the trade." *TLS Mgmt. & Mktg. Servs., LLC v. Rodríguez-Toledo*, 966 F.3d 46, 54 (1st Cir. 2020) (cleaned up); *see Mallet & Co. v. Lacayo*, 16 F.4th 364, 384 (3d Cir. 2021) ("When the breadth of a trade secret description is so far-reaching that it includes publicly available information (like patent disclosures) and admitted industry knowledge, that information is not specific enough to be accorded trade secret status."). We find no reversible error in the district court's determination that TS 24 is not entitled to trade secret status.

---

[4]    Notably, the trial court ordered that Coda provide a "closed" recital of the trade secrets in its interrogatory responses. *See* J.A. 2349–50. Coda's briefing contains no indication that it is appealing this order.

ii.

Turning to TS 7, TS 11, and TS 20, Coda argues that the district court erred in concluding that these trade secrets are not identified with sufficient specificity and were not used by Goodyear. Appellants' Br. 31–37. Coda also challenges the determination that TS 11 and TS 20 were also not secret. *Id.* We find no reversible error in the district court's determination that these trade secrets are not sufficiently definite and were not used by Goodyear.[5]

The district court did not err in determining that Coda failed to define TS 7, TS 11, and TS 20 with sufficient particularity. TS 7 covers "Coda's design and development of a multi-purpose interface for transporting air in a self-inflating tire that can" perform a list of ten functions, including "connect[ing]," "go[ing] around or through," and "hold[ing]" other components. *JMOL Decision* at 596. Absent from TS 7, however, is any description of the information for which trade secret protection is sought—the "design and development" knowledge that would enable someone to develop this interface. *Id.* Rather, TS 7 merely describes the functions that can be performed by the final product created by the knowledge in TS 7. Coda's emphasis of Mr. Hrabal's testimony regarding the "specific value" of the interface is misguided as this testimony fails to address the relevant issue at hand—whether the articulation of TS 7 sufficiently defines the "design and development" information. *See* Appellants' Br. 31 (citing J.A. 15559–61;

---

[5] With respect to TS 11 and TS 20, we need not reach the issue of disclosure by Goodyear or secrecy due to our conclusion that Coda fails to prove other required elements of its trade secret misappropriation claim. For the same reason, we do not address the parties' dispute over whether the district court concluded that TS 7 was not secret. *See* Appellants' Br. 32 n.1; Appellees' Br. 51–52; Appellants' Reply Br. 11.

J.A. 15591). Furthermore, the listed functions are described in vague terms with no detail regarding how those functions are carried out. *See, e.g.*, *Caudill Seed*, 53 F.4th at 381 ("[A] plaintiff asserting a combination trade secret over highly complex technical information cannot merely offer 'lists of broad technical concepts identifying categories of information' without showing which information contained within those categories constituted a trade secret." (cleaned up)); *BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 710 (7th Cir. 2006) (explaining that a trade secret "described in general terms . . . will usually be widely known and thus not worth incurring costs to try to conceal and so not a trade secret"). Thus, Coda failed to fully articulate what aspects of TS 7 constituted a protectable trade secret.

As the district court correctly recognized, TS 11 and TS 20 face similar definiteness problems, including that they are "articulated [as] no more than an undifferentiated list of components" described in vague terms and that they contain "no disclosure of what [the claimed] knowledge is and/or what the design or development is." *JMOL Decision* at 606–07; *see id.* at 596–97. For the same reasons explained above with respect to TS 7, the district court did not err in concluding that TS 11 and TS 20 are not sufficiently definite.

Even if TS 7, TS 11, and TS 20 were valid trade secrets, the district court correctly concluded no reasonable jury could find that Goodyear used these trade secrets. As explained, the descriptions of TS 7, TS 11, and TS 20 all include lists of components or functions. With respect to TS 7, Coda challenges the district court's finding that the testimony of its expert, Mr. Coughlin, was vague and failed to identify all ten TS 7 functions in the Goodyear patent that allegedly disclosed TS 7, *see JMOL Decision* at 605, on the basis that "[t]he unauthorized use need not extend to every aspect or feature of the trade secret; use of any substantial portion of the secret is sufficient." Appellants'

Br. 32 (quoting Restatement (Third) of Unfair Competition § 40 cmt. c); *see also Caudill Seed*, 53 F.4th at 385 (rejecting the argument "that trade-secrets law requires showing acquisition of each atom of a combination trade secret"). However, Coda's assertion that the few TS 7 functions identified by Mr. Coughlin as allegedly being in unauthorized use constitute a "substantial portion of the secret" rests on Mr. Coughlin's conclusory assertions that "Goodyear patented a configuration that is essentially a concept of [TS 7's] concept" and a "perfect knock-off of that technology." Appellants' Br. 32 (quoting and modifying J.A. 16250 at 1118:4–9). As Mr. Coughlin's conclusory testimony "is not supported by sufficient facts . . . it cannot support a jury's verdict." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993).

Coda's arguments regarding Goodyear's use of TS 11 and TS 20 fail for similar reasons. With respect to TS 11, Coda argues that Goodyear disclosed substantial aspects of TS 11 in Goodyear's patents and other documents. Appellants' Br. 33 (citing J.A. 16763; J.A. 80–81; J.A. 20017–100 as "disclosing 'passageway' pump, i.e., a tubeless solution"; then citing J.A. 16766–67; J.A. 21664 as disclosing "an elliptical cross section was easiest to pinch"; then citing J.A. 20163; J.A. 20257 (Figure 5-1); J.A. 22193; J.A. 22262 (Figure 5-2) as "showing tubeless solution"). Coda's citations, however, only speak to usage of two of TS 11's eight components. Even if we ignore the lack of evidentiary support for Goodyear's assertion that these two elements constitute "substantial aspects of TS 11," Appellants' Br. 33, Coda fails to refute Goodyear's assertion that these elements were previously publicly disclosed. *See* Appellees' Br. 55; *id.* at 15–16 (citing J.A. 290 (Figs. 3(d)–(f)); J.A. 271 at 18:27–29; J.A. 15768–69 at 636:23–637:4; J.A. 15933 at 801:6–25); Appellants' Reply Br. 11–14. With respect to TS 20, Coda again alleges use of only two of the seven elements in the combination. *See* Appellants' Br. 36–37 ("Goodyear used both the dead space and the recirculation

concepts . . . ." (citing J.A. 15621; J.A. 16762–63)). And
Coda similarly fails to refute Goodyear's assertion that
these concepts were disclosed in Coda's patent applications
and public presentations. *See* Appellees' Br. 16–18 (citing
J.A. 24021–63;     J.A. 23960;     J.A. 23970;     J.A. 16258
at 1126:19–25); Appellants' Reply Br. 14–15. For the rea-
sons stated, we conclude that the district court did not err
by concluding that no reasonable jury could find that Coda
met its burden of proving all elements of its trade secret
misappropriation claim based on TS 7, TS 11, and TS 20.

iii.

We now turn to the last trade secret, TS 23. Coda ar-
gues that the district court erred in concluding that TS 23
was not used by Goodyear. Appellants' Br. 37–40. We dis-
agree.

Coda presents insufficient evidence for a reasonable
jury to find that Goodyear used TS 23. At trial, the only
alleged evidence of use presented by Coda was a January
21, 2009 email that did not contain the test results de-
scribed in TS 23.[6] *See JMOL Decision* at 609; J.A. 23469
(disclosing only the test results of "approximately 6.5A ab-
solute pressure (or 5.5A relative pressure)" (cleaned up));
J.A. 15546 at 414:9–24 (Mr. Hrabal corroborating the test
results disclosed in the email).

Coda argues that it is irrelevant "that the specific test-
ing results described in the email and those in TS 23 do not

---

[6]     Goodyear claims that none of the test results be-
tween TS 23 and the email match. *See* Appellees' Br. 58
(arguing that the email discloses the test result of achiev-
ing "6.5A of pressure in Coda's prototype tire," but TS 23
discloses "6.5A from a pump in the *tread*"). As it does not
affect our disposition, we assume for the sake of our analy-
sis that matching numerical measurements are indicative
of matching test results.

exactly match, because [Mr.] Hrabal testified that he disclosed TS 23 to Goodyear, and Goodyear plainly relied on Coda's testing data." Appellants' Br. 39–40 (citing J.A. 15546–47; J.A. 15584). The testimony Coda relies on, however, does not indicate that Mr. Hrabal disclosed all the testing results in TS 23 to Goodyear. Rather, Mr. Hrabal testified that TS 23 was "related to [the] testing results communicated to Goodyear" and was being asserted in this case, J.A. 15584 at 452:19–24, and that the "post meeting e-mail . . . shows this information about the results" that were discussed at the meeting. J.A. 15546 at 414:9–16 (referencing J.A. 23469). As already discussed, the testing results reflected in the email do not encompass all results covered in TS 23. *See* J.A. 23469. Coda nevertheless argues that there were "numerous other reasonable inferences" that support the jury verdict. Appellants' Br. 39. Namely, Coda argues that the "testing results gave Goodyear further reason to believe in the technology," pointing to a Goodyear presentation that noted that Goodyear had plans to "[i]nitiate next steps from a technology point of view" for its SIT project on January 30, 2009 and subsequently "confirmed that the project was a 'Go'" in late March 2009. *Id.* (citing J.A. 22170–71). We do not agree with Coda that the timing of Goodyear's project launch alone constitutes sufficient evidence from which a reasonable jury could find Goodyear's usage of TS 23, especially when there is no evidence tying TS 23 to the project and no evidence indicating all the information in TS 23 was conveyed to Goodyear.

For the reasons stated, we affirm the district court's judgment as a matter of law with respect to the trade secret claims.

## B.

Lastly, we address Coda's challenge to the district court's denial of its claim for correction of inventorship of the '586 patent. Coda argues that the district court erred

with respect to its correction of inventorship claim because
it erroneously threw out the jury's verdict under Rule 50(b),
and that the district court is bound by any pertinent fact-
finding of the jury when deciding equitable claims. *See* Ap-
pellants' Br. 50–52. Accordingly, Coda's challenges to the
district court's judgments regarding the correction of in-
ventorship and trade secret claims rise and fall together
because Coda's sole argument supporting reversal of the
district court's denial of correction of inventorship is that
the district court improperly granted judgment as a matter
of law with respect to Coda's trade secret claims. *See id.*
at 50–52 (raising only the argument that the district
court's judgment regarding correction of inventorship must
be reversed because the district court erred in granting
Goodyear's Rule 50(b) motion with respect to the trade se-
cret claims). As we affirmed the district court's judgment
that no reasonable jury could find Goodyear liable for trade
secret misappropriation, we conclude that the district
court's denial of the correction of inventorship claim also
was not erroneous.

Moreover, Coda's challenge separately fails because it
is premised on the position that the district court improp-
erly ignored the jury's factual findings. *See id.* at 51–52;
Appellants' Reply Br. 21–24. In reaching its conclusion
that Coda failed to show it was entitled to correction of in-
ventorship of the '586 patent, the district court noted dif-
ferences between the locations of the pump assembly
covered by TS 24 and by the '586 patent claims and deter-
mined that the trade secret and patent claims do not cover
the same scope. *See Bench Decision* at 587–89. The jury,
however, was never asked to compare the scopes of the '586
patent claims and TS 24. *See* J.A. 17996–18002. Accord-
ingly, the district court's finding that TS 24 and the '586
patent claims have different scopes does not conflict with
the jury's findings. The district court did not err in con-
cluding that Coda's alleged trade secret is insufficient evi-
dence to show that Mr. Hrabal was the sole inventor of the

'586 patent.  *See Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) ("Conception is the touchstone to determining inventorship."); *REG Synthetic Fuels, LLC v. Neste Oil Oyj*, 841 F.3d 954, 962 (Fed. Cir. 2016) ("Conception must include every feature or limitation of the claimed invention.").  Thus, the district court's conclusion did not result from erroneously ignoring factual findings made by the jury.

For the reasons stated, we affirm the district court's judgment regarding Coda's correction of inventorship claim.

## IV. CONCLUSION

We have considered Coda's remaining arguments and find them unpersuasive.  We affirm the district court's judgment.

**AFFIRMED**

<u>**STATUTORY ADDENUM**</u>

**Ohio Uniform Trade Secrets Act (OUTSA), Ohio Revised Code 1333.61 *et seq.***

**Section 1333.61. Definitions**

As used in sections 1333.61 to 1333.69 of the Revised Code, unless context requires otherwise:

**(A)** "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

**(B)** "Misappropriation" means any of the following:

    **(1)** Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

    **(2)** Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:

        **(a)** Used improper means to acquire knowledge of the trade secret;

        **(b)** At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

        **(c)** Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

**(C)** "Person" has the same meaning as in division (C) of section 1.59 of the Revised Code and includes governmental entities.

**(D)** "Trade secret" means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

**(1)** It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

**(2)** It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

## Section 1333.63. Damages

**(A)** Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant in a civil action is entitled to recover damages for misappropriation. Damages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty that is equitable under the circumstances considering the loss to the complainant, the benefit to the misappropriator, or both, for a misappropriator's unauthorized disclosure or use of a trade secret.

**(B)** If willful and malicious misappropriation exists, the court may award punitive or exemplary damages in an amount not exceeding three times any award made under division (A) of this section.

# CERTIFICATE OF SERVICE

I hereby certify that, on the 28th day of January, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which thereby served a copy upon all counsel of record.

Upon acceptance by the Court of the e-filed document, the required eighteen paper copies of the petition will be delivered to the Court via Federal Express, priority overnight, within the time provided in the Court's rules.

January 28, 2026                    /s/ Boyd Cloern

                                    BOYD CLOERN
                                    LEAH QUADRINO
                                    CHRISTOPHER A. SUAREZ
                                    SCOTT M. RICHEY
                                    JOSEPH F. ECKER
                                    STEPTOE LLP
                                       1330 Connecticut Ave., N.W.
                                       Washington, DC 20036
                                       (202) 429-3000
                                       bcloern@steptoe.com

                                    *Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this petition complies with the type-volume limitations of Fed. Cir. R. 32(b) and.  This Combined Petition for Panel Rehearing and Rehearing En Banc contains 3,885 words, excluding the parts exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b), as counted by Microsoft® Word 365, the word processing software used to prepare this petition.

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).  This petition has been prepared in a proportionally spaced typeface using Microsoft® Word 365, Times New Roman, 14 point.

January 28, 2026

*/s/ Boyd Cloern*

BOYD CLOERN
LEAH QUADRINO
CHRISTOPHER A. SUAREZ
SCOTT M. RICHEY
JOSEPH F. ECKER
STEPTOE LLP
  1330 Connecticut Ave., N.W.
  Washington, DC 20036
  (202) 429-3000
  bcloern@steptoe.com

*Counsel for Plaintiffs-Appellants*